537 P.2d 608

**Nicholas CHIREKOS and Plantation Real Estate, Inc., an Illinois Corporation, Appellants,**

v.

**Pauline CHIREKOS, Appellee.**

**No. 2 CA–CIV 1789.**

Court of Appeals of Arizona, Division 2.

June 30, 1975.

Rehearing Denied July 29, 1975.

Mesch, Marquez & Rothschild, P.C. by Tom R. Clark, Tucson, for appellants.

Gerald B. Hirsch, Tucson, for appellee.

## OPINION

KRUCKER, Judge.

Appellants seek reversal of a superior court judgment in favor of appellee decreeing appellee to be the owner of an undivided one-half interest in certain real property and ordering appellant-corporation to execute a deed to such undivided one-half interest to appellee.

The sole question is whether there is sufficient evidentiary support for the lower court's imposition of a constructive trust on the subject real property.

There is no set o unyielding formula in decreeing a constructive trust and courts will do so when a party is under an equitable duty to give another the benefit of property to which he has acquired legal title under circumstances making it inequitable that he be allowed to retain the property. Luplow v. Pasqualetti Properties, Inc., 101 Ariz. 90, 416 P.2d 414 (1966); L. M. White Contracting Co. v. Tucson Rock and Sand Co., 11 Ariz.App. 540, 466 P.2d 413 (1970). The defense of the statute of frauds was not available to appellants since the statute has no application to a constructive trust. King v. Uhlmann, 103 Ariz. 136, 437 P.2d 928 (1968); *L. M. White Contracting Co.,* supra.

One seeking to impose a constructive trust must show by clear and convincing proof that he is entitled to it. Nitrini v. Feinbaum, 18 Ariz.App. 307, 501 P.2d 576 (1972). The question of whether the evidence is sufficient to be clear and convincing is primarily for the trial court and we do not disturb its finding unless we can say as a matter of law that no one could reasonably find the evidence to be clear and convincing. Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786 (1955); King v. Uhlmann, supra. Our review of the evidence leads us to conclude that we should not interfere with the lower court's determination.

The following evidence was presented at trial. Mr. and Mrs. Chirekos

were married in Illinois in 1946 and prior to 1972 visited Tucson on numerous occasions. The primary purpose of these visits was for Mrs. Chirekos' health since she had suffered from rheumatoid arthritis for many years and her exposure to the Tucson climate made her condition less painful.

Prior to October, 1969, the Chirekos decided to purchase a home in Tucson. Mrs. Chirekos testified:

"Q You and he had a discussion as to whose house that would be?

"A He said it would be built for my health, it would be my home, and on my birthday and anniversary and Christmas after that he said, don't expect any presents, I gave you a house."

In October, 1969, the Chirekos, after examining a model townhouse at Tucson National, decided to purchase one. (Mrs. Chirekos had previously been in Tucson for a two to three week priod.) On October 20, 1969, a sales agreement for the purchase of a lot and the construction of a townhouse thereon was signed by both Mr. and Mrs. Chirekos. The sales agreement recited that the buyer was Nicholas Chirekos and Pauline Chirekos, that the total down payment was $9,400, that $1,000 earnest money had been received, and that a balance of $8,400 was due and payable within 15 days. The $1,000 earnest money was paid by Mr. Chirekos' personal check.

Mr. Chirekos owned and operated a restaurant in Illinois, Plantation Inc. This corporation owned all the stock of Plantation Real Estate Corporation, an Illinois corporation.

After execution of the sales agreement, Mrs. Chirekos came to Tucson from Illinois and supervised certain details of the construction and purchased all the furniture. According to her, her husband had told her to pick out what she wanted for the house and she understood that it was her house. Although Mr. Chirekos testified that his original intent was to purchase the townhouse through Plantation Real Estate, Inc., there was no evidence that he communicated this intent to his wife. Mr. Chirekos testified as to his reasons for purchasing the property:

"Q . . . Why was this property purchased?

A Very simply. It was the only way I could have purchased it at the time.

Q Was it purchased for any other reason?

A Well, for an investment, yes.

Q Is it your testimony you purchased this as an investment?

A I think it's a very good investment, yes.

Q And that's the only reason you purchased it?

A And to live in.

Q For who to live in?

A At that time my wife and I and my children.

Q You did intend to move to Arizona?

A When we retired I might if I like it.

Q When it was purchased it was purchased for your wife's residence?

A I think I was part of my wife at the time, so was my children."

On February 16, 1970, the Chirekos signed the closing statement for the purchase of the home. Mrs. Chirekos signed as vice-president and secretary of Plantation Real Estate, Inc., and Mr. Chirekos signed as president and treasurer of the corporation. The deed to the property was made out to Plantation Real Estate Inc. Mrs. Chirekos testified as to her signing in the foregoing manner:

"A We went down to close and to get the key for the house. And as was his usual procedure, Mr. Chirekos said sign, and I signed.

Q Do you know what documents you signed on that date?

A I never questioned him. It wasn't his policy to tell me or discuss it

with me, I just signed when he told me to.

\*   \*   \*   \*   \*   \*

Q When is the first time you realized your husband claimed his corporation owned the house and that you didn't?

A Well, when I really realized it was after I filed for divorce.

Q Will you describe to the court what happened then?

A He put the house up for sale and tole (sic) me to get out of it. He told me it wasn't my house.

\*   \*   \*   \*   \*   \*

Q What year was that?

A '72.

Q Between October of '69 when you signed the original purchase contract and the year '72, when you instituted a divorce proceeding, did you have any inclination whatsoever your husband took the position it was not your house?

A No. I always felt it was my house. He told people it was my house. I just lived there all the time and—it never occurred to me that it wasn't.

Q Prior to the time it was purchased, you did have discussions with your husband as to who would own the house?

A He said, "I'm building the house for your health, it's your house."

Mr. Chirekos testified that Plantation Real Estate, Inc. made all the payments required to be made on the purchase of the house. Admitted into evidence were photocopies of checks written by him on the Plantation Real Estate, Inc. checking account. One check dated October 29, 1969, in the amount of $1,000 was payable to himself, apparently as reimbursement for the earnest money deposit. However, the $8,400 balance due on the down payment was paid by a check in that amount from the restaurant corporation, The Plantation, Inc.

The minutes of Plantation Real Estate, Inc. reflect the following corporate action. On January 13, 1969, a resolution was adopted amending Art. III of the by-laws to show the number of directors to be two instead of three. Also, Nicholas J. Chirekos and Pauline Chirekos were elected as directors. The Board of Directors then met and elected as officers of the corporation Nicholas J. Chirekos and Pauline Chirekos, the former as president and treasurer and the latter as vice-president and secretary.

The minutes of January 12, 1970, show the adoption of a resolution as follows:

*"Action by Sole Shareholder*

Plantation, Inc., by Nicholas J. Chirekos, President, the sole owner of record of all outstanding shares of PLANTATION REAL ESTATE CORP., an Illinois corporation, hereby resolves and takes the following action:

1. RESOLVES that the number of Directors shall be one (1) and Section 2 of Article III of the By-Laws be amended to show the number of Directors to be 1 instead of 2.

2. I hereby nominate and select NICHOLAS J. CHIREKOS to act as the sole Director of PLANTATION REAL ESTATE CORP., an Illinois corporation, and to hold office until the next annual meeting of the Shareholder of said corporation or until his successor shall be elected and shall have qualified.

PLANTATION, INC.

Sole owner of record of all outstanding shares of PLANTATION REAL ESTATE CORP., an Illinois corporation,

By ——— s/Nicholas J. Chirekos
Nicholas J. Chirekos, President"

The minutes of January 12, 1970, likewise reflect the following action by the sole director: he appointed himself president and treasurer and his wife vice-presi-

dent and secretary. The minutes also recite the following:

"2. I do hereby authorize the payment of approximately $51,000 for the townhouse in Tucson, Arizona, to be held by the corporation for rental purposes. I do hereby authorize the leasing of same for a monthly rental of from $300 to $600 per month, depending upon the season.

3. I do hereby authorize the President and Vice President to purchase the furniture and furnishings for the townhouse in Tucson, Arizona, and I do hereby authorize the payment of the invoices for same as long as they are within reason."

The January 12, 1970 minutes were signed by Nicholas J. Chirekos as sole director of Plantation Real Estate Corporation. Mrs. Chirekos had no knowledge of the foregoing action taken on January 12, 1970, and there was no evidence of any assignment to the corporation of Mr. and Mrs. Chirekos' interest in the subject realty.

Both parties to this litigation cite much authority concerning parol gifts of land. We need not, however, address ourselves to this question since the October 20, 1969 purchase agreement recited the fact that both Nicholas and Pauline were the buyers. Both signed the agreement and in the event of their default, the seller could specifically enforce the agreement against both.

The question thus becomes whether Mr. Chirekos, in October, 1969, intended to make a gift to his wife of a one-half undivided interest in the townhouse property. Whether or not a gift had been made was a question of fact. 38 C.J. S. Gifts § 69. The trial judge, sitting as the trier of fact, apparently concluded that Mr. Chirekos had made a gift to his wife and we will not interfere with such determination unless it was clearly unwarranted. Andreotti v. Andreotti, 224 Cal.App.2d 533, 36 Cal.Rptr. 709 (1964).

We believe there was sufficient evidence to support a finding of a gift to Mrs. Chirekos. Where the relationship of the parties is such that the donee has a natural claim on the generosity of the donor, courts look with favor on a claim of gift. 38 C.J.S. Gifts § 67c. Even where the consideration is paid by the husband alone and a conveyance is made to husband and wife jointly, there is a presumption of an intention to make a gift or settlement on a wife because of the husband's duty to support the wife. 41 Am.Jur.2d Husband and Wife § 90. Of course the husband can rebut this presumption by showing a contrary intention. Although Mr. Chirekos testified that his intention was otherwise, the trial court could properly disregard such testimony. Graham v. Vegetable Oil Products Co., 1 Ariz.App. 237, 401 P.2d 242 (1965). Mrs. Chirekos, on the other hand, testified as to subsequent statements of Mr. Chirekos concerning the townhouse and the trial court could consider these subsequent declarations as admissions tending to show he had made a gift to his wife. 38 Am.Jur.2d Gifts § 99.

The relationship of Mr. and Mrs. Chirekos was confidential in the highest degree. Dawson v. McNaney, 71 Ariz. 79, 223 P.2d 907 (1950). As stated in MacRae v. MacRae, 37 Ariz. 307, 294 P. 280 (1930):

"It is presumed by the law that they act with one another in absolute confidence, that each will be faithful to the other's interests, and that they need not take the precautions in dealing with each other that are customary between strangers. If it were required that in their mutual relations they must deal with each other at arms' length, the marital status would become intolerable." 37 Ariz. at 314, 294 P. at 282.

When the parties purchased the townhouse in 1969, they had been married for 23 years. Mr. Chirekos was a knowledgeable businessman and apparently handled all financial transactions. When Mrs.

**228**

Chirekos signed the closing statement without reading it or raising any questions, she had a right to rely on her husband's fidelity to her interest. Under these circumstances, the trial court properly concluded that Plantation Real Estate, Inc. had acquired Mrs. Chirekos' interest in the townhouse because of Mr. Chirekos' abuse of a confidential relation and to allow it to retain her interest would be unconscionable. The fact that legal title was vested in the corporation does not bar a constructive trust since it was chargeable with the knowledge of Mr. Chirekos, an officer and director. 76 Am.Jur.2d Trusts § 221.

Finding no basis for reversal, we affirm.

HOWARD, C. J., and HATHAWAY, J., concur.