IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

NOV 29 2006

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| KENNETH TURLEY and KATHY TURLEY, husband and wife, | ) ) ) | 2 CA-CV 2006-0070 DEPARTMENT A |
| Plaintiffs/Appellants, | ) ) | O P I N I O N |
| v. | ) ) | |
| DEAN ETHINGTON and LORRAINE ETHINGTON, husband and wife, | ) ) ) | |
| Defendants/Appellees. | ) ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. CV200501101

Honorable Boyd T. Johnson, Judge

REVERSED

---

Johnson, Rasmussen, Robinson & Allen, P.L.C.
  By John W. Rasmussen and Jennifer M. Wolfe                         Mesa
                                        Attorneys for Plaintiffs/Appellants


Fennemore Craig, P.C.
  By Keith L. Hendricks, Janice Procter-Murphy,
  and Whitney Sedwick                                               Phoenix
                                        Attorneys for Defendants/Appellees

---

H O W A R D, Presiding Judge.

¶1        Appellants Kenneth and Kathy Turley (the Turleys) appeal from the trial court's judgment in favor of appellees Dean and Lorraine Ethington (the Ethingtons) dismissing the Turleys' complaint pursuant to Rule 12(b)(6), Ariz. R. Civ. P., 16 A.R.S., Pt. 1. The Turleys argue the trial court erred when it found their claims barred by the statute of frauds, and when it granted the Ethingtons' request for attorney fees. Because we hold the statute of frauds does not bar the imposition of constructive trusts and does not apply to agreements for the transfer of real property in some partnership situations under the Revised Uniform Partnership Act (RUPA), we reverse.

### Factual and Procedural Background

¶2        When reviewing a trial court's judgment granting a motion to dismiss a complaint pursuant to Rule 12(b)(6), we view the alleged facts as true. *Riddle v. Ariz. Oncology Servs., Inc.*, 186 Ariz. 464, 465, 924 P.2d 468, 469 (App. 1996). In March 2004, Kenneth Turley learned that a 200-acre parcel of real property was for sale, but was not listed with a salesperson. Because Turley did not have the financial resources to purchase the 200-acre parcel, he approached his uncle, Dean Ethington. Turley and Ethington orally agreed to enter into a partnership on the following terms: (1) the Ethingtons would provide $10,000 earnest money to be deposited at the opening of escrow; (2) Turley would immediately search for a buyer or buyers for some or all of the 200-acre parcel before the close of escrow in the hopes of a "double escrow"; (3) any money the partnership received from the sale or multiple sales of the 200 acres would first be used to complete the purchase

2

of the 200-acre parcel; (4) then the Ethingtons would be reimbursed for any expenditures they had made and expenses they had incurred while acquiring the 200-acre parcel; and (5) finally, any remaining profits and any remaining acreage would be divided equally between the Turleys and the Ethingtons.

¶3 The Ethingtons submitted the offer to purchase the 200 acres, which the seller accepted. The Ethingtons and the sellers opened an escrow, and the Ethingtons provided the $10,000 earnest money deposit. Turley located buyers for two eighty-acre parcels of the property. Both transactions were expected to close simultaneously with the partnership's purchase of the initial 200 acres. But, because the buyer of one parcel was unable to close simultaneously with the partnership's purchase of the initial 200 acres, Turley and Ethington agreed that the Ethingtons would borrow the money necessary to complete the purchase of the 200-acre parcel against their existing line of credit so that the partnership could simultaneously convey good title to the other buyer. Turley agreed to allow the Ethingtons to take title to the 200-acre parcel solely in Ethington's name based on Ethington's verbal assurance that he would honor their fifty-fifty partnership arrangement.

¶4 The escrows for the partnership's purchase of the 200-acre parcel and the simultaneous sale of one eighty-acre parcel closed. Approximately twenty-six days after the purchase of the 200-acre parcel had been completed, the other buyer of an eighty-acre parcel performed by paying the full purchase price and that escrow closed. The Turleys then requested that their names be added as owners of record on an undivided one-half interest

3

in the remaining forty-acre parcel now owned free and clear and one-half of the net sale proceeds from the sale of the two eighty-acre parcels, if any, after the Ethingtons had been reimbursed pursuant to the partnership agreement.[1] The Ethingtons refused to acknowledge that the Turleys had any interest in either the remaining forty acres or the resulting profits.

¶5            The Turleys sued the Ethingtons, seeking the imposition of a constructive trust and monetary damages based on breach of fiduciary duty, fraud, breach of the duty of good faith and fair dealing, and unjust enrichment. The Ethingtons filed a motion to dismiss pursuant to Rule 12(b)(6), arguing, in part, that the statute of frauds, A.R.S. § 44-101, prohibited the Turleys' claim based on *Johnson v. Gilbert*, 127 Ariz. 410, 413, 621 P.2d 916, 919 (App. 1980). The trial court concluded the Ethingtons were entitled to judgment as a matter of law because "[t]he [s]tatute of [f]rauds applies . . . [and] the [Turleys] will not be able to prove the existence of an oral partnership agreement between the parties nor an oral contract to convey an interest in real property." The trial court entered its judgment in favor of the Ethingtons, including an award of attorney fees pursuant to A.R.S. § 12-341.01. The Turleys now appeal the trial court's judgment.

### Constructive Trusts and the Statute of Frauds

¶6            The dismissal of a complaint is only appropriate when the "plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fid. Sec.*

---

[1]The Turleys also acknowledge that any profits they would have received under the partnership agreement would have been reduced by $20,800, the amount they owed the Ethingtons in unrelated transactions.

4

*Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, ¶ 4, 954 P.2d 580, 582 (1998). Whether the statute of frauds applies is a question of law, *see William Henry Brophy College v. Tovar*, 127 Ariz. 191, 194, 619 P.2d 19, 22 (App. 1980), which we review de novo. *Nielson v. Patterson*, 204 Ariz. 530, ¶ 5, 65 P.3d 911, 912 (2003).

¶7            The Turleys argue that the trial court erred when it found their complaint was barred by the statute of frauds because the statute of frauds does not apply to the remedy of constructive trusts. Specifically, the Turleys argue they are entitled to the imposition of a constructive trust on the remaining forty-acre parcel because Ethington breached his fiduciary duty under the partnership when he refused to transfer a one-half interest in the real property to the Turleys.

¶8            The statute of frauds provides that, unless the agreement is in writing and signed by the party to be charged: "[n]o action shall be brought in any court . . . [u]pon an agreement . . . for the sale of real property or an interest therein." A.R.S. § 44-101(6). But the statute of frauds does not bar constructive trusts, even in real property interests. *See French v. French*, 125 Ariz. 12, 15, 606 P.2d 830, 833 (App. 1980); *Condos v. Felder*, 92 Ariz. 366, 370, 377 P.2d 305, 308 (1962). A constructive trust is an equitable doctrine that prevents one person from being unjustly enriched at the expense of another. *Chirekos v. Chirekos*, 24 Ariz. App. 223, 224, 537 P.2d 608, 609 (1975). It "arises by operation of law and not by agreement or intention." *Harmon v. Harmon*, 126 Ariz. 242, 244, 613 P.2d 1298, 1300 (App. 1980).

5

¶9        Because imposition of a constructive trust is an equitable remedy, "[t]here is no set or unyielding formula" courts use to impose them. *Chirekos*, 24 Ariz. App. at 224, 537 P.2d at 609.  A court may impose a constructive trust "whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress or through any other means which render it unconscionable for the holder of legal title to continue to retain and enjoy its beneficial interest." *Harmon*, 126 Ariz. at 244, 613 P.2d at 1300.[2]  Additionally, courts will impose constructive trusts if there has been a breach of fiduciary duty. *French*, 125 Ariz. at 15, 606 P.2d at 833; *Raestle v. Whitson*, 119 Ariz. 524, 528, 582 P.2d 170, 174 (1978); Restatement of Restitution § 160 cmt. d (1937).  The Turleys could therefore be entitled to a constructive trust based on the general rule for constructive trusts.

¶10        The Ethingtons, on the other hand, argue that constructive trusts merely protect, and cannot create, interests in land.  But, they also concede that no case recognizes this distinction.  And any such restriction would unnecessarily hamper a court's ability to impose a constructive trust "'[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest.'" *Condos*, 92 Ariz. at 370, 377 P.2d at 307, *quoting Beatty v. Guggenheim Exploration Co.*, 122 N.E. 378, 380 (N.Y. 1919).  Moreover, in *French*, this court approved the imposition

_____

[2]The requirements for imposition of a constructive trust must be proven by clear and convincing evidence.  *Harmon*, 126 Ariz. at 244, 613 P.2d at 1300.

6

of a constructive trust when the plaintiff had "acquired legal title to [the land] as constructive trustee for himself and his siblings, with the understanding that it be kept in the French family" even though, at the time he had acquired title, his siblings had no interest in the land. 125 Ariz. at 14, 606 P.2d at 832.

**¶11** Furthermore, *Bromberg & Ribstein on Partnerships*, which the Ethingtons cited during oral argument in this court, explicitly states that constructive trusts can be a remedy for a breach of fiduciary duty and that "[n]o writing is required under the [s]tatute of [f]rauds to establish such a trust, even if it involves the *creation* of an interest in land." 2 Alan R. Bromberg & Larry E. Ribstein, *Bromberg & Ribstein on Partnerships* § 6.07(i), at 6:93-94 (1988) (emphasis added). The Restatement of Restitution also supports this result. If a court imposes a constructive trust based on a breach of fiduciary duty, it may be doing so "in favor of a plaintiff who has not suffered a loss . . . . on the ground that [the defendant] would be unjustly enriched if he were permitted to retain [the property], even though that enrichment is not at the expense . . . of the plaintiff." Restatement §160 cmt. d. Moreover, *Scott on Trusts* takes the position that imposition of a constructive trust may be appropriate where a person in a fiduciary relationship has purchased property for himself that he should have purchased for a beneficiary. This further undermines the Ethingtons' argument. 5 William F. Fratcher, *Scott on Trusts* § 499, at 503-04 (1989). Accordingly, these scholarly texts do not support the distinction the Ethingtons suggest.

7

¶12　　　　Here, the complaint alleged that Turley and Ethington had entered into a partnership agreement for the purpose of purchasing and reselling the 200-acre parcel for profit. Consequently, when Ethington failed to convey a portion of the profits to Turley or the real property to the partnership, he simultaneously breached the fiduciary duty he owed to Turley under the partnership agreement. *See* A.R.S. § 29-1034. Based on the facts alleged in the complaint, the Turleys have stated a cause of action under which the doctrine of constructive trusts might apply.

¶13　　　　The Ethingtons further assert that because the partnership agreement "attempts both to establish a joint ownership in the [p]roperty and require the transfer of an interest therein," the Turleys cannot prove that agreement when arguing a constructive trust may be imposed for a breach of fiduciary duty under that agreement. The Ethingtons rely on *Johnson*, which held: "a contract requiring a transfer of land from one partner or joint venturer to another is within the [s]tatute of [f]rauds." 127 Ariz. at 413, 621 P.2d at 919. But *Johnson* did not consider whether a constructive trust could be imposed in a real property transaction despite the statute of frauds. And, as we have noted above, the statute of frauds does not apply to the constructive trust doctrine because it is an equitable doctrine imposed by law and is not based on the contract. *See Harmon*, 126 Ariz. at 244, 613 P.2d at 1300.

**Turley's Damage Claims, the Statute of Frauds, and the RUPA**

¶14     The Turleys also requested monetary damages from the Ethingtons for fraud and breach of fiduciary duty, which the Ethingtons argue is barred by the statute of frauds, as interpreted by *Johnson*. We first note that the Turleys' claim for profits based on an oral partnership agreement, not involving a transfer of an interest in real property, would not be within the statute of frauds in any event. *See Ellingson v. Sloan*, 22 Ariz. App. 383, 388, 527 P.2d 1100, 1105 (1974); *Eads v. Murphy*, 27 Ariz. 267, 273, 232 P. 877, 880 (1925). But the Ethingtons distinguish *Ellingson* and *Eads* by arguing that part of the partnership agreement required the transfer of an interest in land. In that situation, they claim *Johnson* controls.

¶15     *Johnson* relied on *Corbin on Contracts* (*Corbin*) in reaching its conclusion that the statute of frauds barred proving a contract for the transfer of land from one partner to another. 127 Ariz. at 413, 621 P.2d at 919. When *Johnson* was decided, § 411 stated that "[a] contract between two persons to go into the business of buying and selling real estate as partners or as joint adventurers, sharing the profits and losses thereof, is not within [the statute of frauds] *unless* there is a provision for the transfer of specific land from one party to the other." 4 Caroline N. Brown, *Corbin on Contracts* § 17.12, at 466 n.13 (1997) (emphasis added). But § 17.12 of the 1997 version of *Corbin on Contracts* states:

> Given the great confusion in the caselaw and the potential difficulty of fitting cases into the rather strained categories suggested by the cases, [speculating in or holding title to real property,] it seems best to advocate a brightline rule, where there is ample evidence of the partnership and the U.P.A. [Uniform Partnership Act] applies. In such cases, it is suggested

9

that any agreement between partners relating to or bringing real property within the framework of the partnership should be held *not* within the statute.

*Id*. at 465 (emphasis in original). Thus, after *Johnson*, *Corbin* changed its recommendation because the rule had produced unsatisfactory results and because the Uniform Partnership Act (UPA) and the RUPA provide adequate protection against fraud in oral partnerships calling for the transfer of real property. *Id.* at 466 n.13. Therefore, we must determine whether we should continue to hold to the rule announced in *Johnson*.

### A. Arizona's RUPA

¶16 Arizona has adopted the RUPA, A.R.S. §§ 29-1001 through 29-1111, under which two or more persons create a partnership when they "associat[e] . . . to carry on as co-owners [of] a business for profit." § 29-1012. The RUPA does not require partnership agreements, even those governing partnerships dealing in real property, to be in writing. *See id*.; § 29-1001(16). Once a partnership is formed, its members owe fiduciary duties of loyalty and care to the partnership and the other partners and have an obligation of good faith and fair dealing. § 29-1034.

¶17 The RUPA provides that "[e]ach partner is entitled to an equal share of the partnership profits" and that "[a] partner may use or possess partnership property only on behalf of the partnership." § 29-1031(B), (G). "A partner may maintain an action against the partnership or another partner for legal or equitable relief . . . to . . . [e]nforce the partner's rights under the partnership agreement" and under §§ 29-1031 and 29-1034. § 29-

10

1035. The RUPA also specifically addresses situations, such as presented in this case, when property is acquired in the name of one partner, without reference in the property's deed to "the person's capacity as a partner or of the existence of a partnership without use of partnership assets," and offers protection against fraud by creating the presumption that the property is the separate property of the partner named in the deed. § 29-1014(D).

## B. The Statute of Frauds, the RUPA, and *Johnson*

¶18     As noted above, the statute of frauds provides that, unless the agreement is in writing and signed by the party to be charged: "[n]o action shall be brought in any court . . . [u]pon an agreement . . . for the sale of real property or an interest therein." A.R.S. § 44-101(6). On the other hand, the RUPA recognizes oral partnership agreements, including oral partnership agreements concerning real property. *See* § 29-1012 (recognizing oral partnership agreements); § 29-1001(16) ("property" includes real property); § 29-1013 ("[p]roperty acquired by a partnership is property of the partnership and not of the partners individually"). It also sets forth a comprehensive structure for determining the rights and liabilities of the partners in the oral partnership, including the filing of a court action. *See* §§ 29-1031 through 29-1036. But the statute of frauds would prohibit any action from being filed based on oral partnership agreements recognized by the RUPA. Therefore, the RUPA and the statute of frauds conflict, and contrary to the Ethingtons' argument, cannot be readily harmonized.

11

¶19 The Ethingtons counter that the RUPA does not explicitly exclude the agreements it governs from the statute of frauds. Even so, there is nothing in the RUPA that incorporates the statute of frauds either. Because the statute of frauds is "displaced by particular provisions" of the RUPA, we reject this argument. A.R.S. § 29-1004(A). The Ethingtons, however, further argue that had the legislature intended to exclude partnership agreements calling for the transfer of real property between partners from the statute of frauds it would have explicitly done so. But, by enacting the RUPA, which, again, specifically allows for oral agreements between partners concerning real property, the legislature has already made that decision. Moreover, under the RUPA, partners necessarily owe a fiduciary duty to each other. § 29-1034. Because the breach of fiduciary duty will take an agreement out of the statute of frauds for purposes of the constructive trust doctrine, the interplay between the RUPA, the statute of frauds, and the constructive trust doctrine already creates a situation where the statute of frauds has no practical application to agreements governed by the RUPA.

¶20 The Ethingtons argue, however, that "whether the [s]tatute of [f]rauds should no longer be applied to the transfer of real property among and between partners and partnerships is a legislative decision, not a judicial one." But at the time *Johnson* was decided, as now, partners did not own a direct interest in the real property during the partnership. Former A.R.S. §§ 29-224 through 29-226; A.R.S. §§ 29-1001(16), 29-1013. Thus, the partnership agreement did not necessarily constitute "an agreement . . . for the sale

12

of real property or an interest therein." § 44-101(6). Therefore, neither the UPA nor the statute of frauds dictate the result in *Johnson*. But, based on *Corbin*, this court extended the reach of the statute of frauds to oral partnership agreements already covered by the UPA, former A.R.S. §§ 29-201 through 29-244. Based on the change in *Corbin*, reviewing that judicial decision and attempting to discern the legislature's intent when it repealed the UPA and enacted the RUPA is appropriate.

### C. *Corbin*'s Approach

¶21 *Corbin* identifies four situations involving partnership agreements that provide for transfers of real property: (1) from the partnership to third parties, (2) from a partner to the partnership, (3) from one partner to another, and (4) from the partnership to a partner. *Corbin on Contracts, supra*, at 465-69. The first, transfer of real property from the partnership to third parties, does not apply here. Because the three remaining situations could potentially have occurred here, "under any interpretation of the facts susceptible of proof," *see Fidelity Security Life Insurance Co. v. State Department of Insurance*, 191 Ariz. 222, ¶ 4, 954 P.2d 580, 582 (1998), we review them below.

¶22 When there is an agreement calling for the transfer of an interest in real property from a partner to the partnership, "[a] persuasive argument can be made that [the agreement] . . . is removed from the statute [of frauds] by the U.P.A.'s acknowledgment of oral and informal partnership agreements . . . . [because] the U.P.A. provides adequate protection from fraudulent or mistaken claims of other partners, leaving little necessity for

13

the protection of the statute of frauds." *Corbin on Contracts, supra*, at 467. Furthermore, Corbin reasons that application of the statute of frauds to a transfer of real property from a partner to the partnership may create unnecessary controversy, litigation, and injustice. *Id*.

¶23     When the agreement calls for the transfer of an interest in real property from one partner to another, Corbin states that, although cases have held such an agreement is within the statute of frauds,[3] "the U.P.A.'s provisions suggest that the substance of a transaction between partners should control, rather than its form. . . . [Therefore, when] a contract for the conveyance of real property by a partner to the partnership . . . take[s] the form of a contract with other partners . . . . the transaction [should be] regarded as one between the partner and the partnership . . . ." *Id*. at 468. Therefore, as with conveyances between a partner and the partnership, the statute of frauds would not apply. *Id.*

¶24     Finally, when the agreement calls for the transfer of an interest in real property from the partnership to a partner, Corbin suggests that the statute of frauds should apply. *Id*. at 468-69. Corbin reasons that because the UPA "does not provide for . . . compensation or distribution in kind," the protection of the statute of frauds is needed and should apply, absent another exception. *Id.*

¶25     The Ethingtons argue we must avoid the Corbin approach because "[e]xcluding the transfer of property within the partnership context from the [s]tatute of [f]rauds . . . has far reaching implications with respect to the marketability of land," "the

---

[3]Corbin cites *Johnson* for this proposition. *Corbin on Contracts, supra*, at 468 n.19.

14

Department of Real Estate's regulatory scheme," and the reliability of real property records. But as we stated above, when a partner breaches his or her fiduciary duty, imposing a constructive trust is already an available remedy. *See French*, 125 Ariz. at 15, 606 P.2d at 833; *Raestle v. Whitson*, 119 Ariz. 524, 528, 582 P.2d 170, 174 (1978); Restatement of Restitution § 160 cmt. d (1937). And an action for profits is already available. *See Eads v. Murphy*, 27 Ariz. 267, 273, 232 P. 877, 880 (1925). Consequently, we believe this opinion will simply clarify the law rather than propel Arizona partnership property transactions into a state of chaos.

¶26      We recognize that

> "[T]he principle of stare decisis and the need for stability in the law in order to have an efficient and effective functioning of our judicial machinery dictate that we consider decisions of coordinate courts as highly persuasive and binding, unless we are convinced that the prior decisions are based upon clearly erroneous principles."

*Scappaticci v. Sw. Sav. & Loan Ass'n*, 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983), *quoting Castillo v. Indus. Comm'n*, 21 Ariz. App. 465, 471, 520 P.2d 1142, 1148 (1974). Consequently, we depart from stare decisis only when we have "'special justification'" to do so. *State v. Hickman*, 205 Ariz. 192, ¶ 37, 68 P.3d 418, 426 (2003), *quoting Arizona v. Rumsey*, 467 U.S. 203, 212, 104 S. Ct. 2305, 2311 (1984).

15

**¶27** Returning to *Johnson*, because Arizona's legislature has adopted the UPA, *see Rhue v. Dawson*, 173 Ariz. 220, 230, 841 P.2d 215, 225 (App. 1992), and then the RUPA,[4] and because Corbin has changed its recommendation, we conclude that we have a special justification to depart from *Johnson*. And, the courts have already allowed constructive trusts to be used to remedy breaches of the partnership fiduciary duty. Further, Division One of this court has allowed a claim for monetary damages in a partnership context, based on an agreement to transfer an interest in real property. *See Ellingson v. Sloan*, 22 Ariz. App. 383, 385, 387-88, 527 P.2d 1100, 1102, 1104-05 (1974). Accordingly, allowing a claim for monetary damages in the partnership context is not a significant departure from existing law. Therefore, we overrule *Johnson* to the extent it conflicts with this opinion and adopt Corbin's approach to applying or refusing to apply the statute of frauds to contracts for the conveyance of real property between and among partners and partnerships.

## Conclusion

**¶28** The Turleys could prove facts under the complaint supporting a claim for imposing a constructive trust. The statute of frauds would not bar imposition of a constructive trust. The Turleys also could prove partnership situations that fall outside the statute of frauds. Thus it was error to dismiss the Turleys' complaint, including the counts requesting monetary damages.

---

[4]No issue has been presented concerning whether the Turleys' complaint complies with A.R.S. §§ 29-1001 through 29-1111.

16

**¶29** We need not address the Turleys' remaining arguments because we hold that the Turleys may be able to prove facts under the complaint that would remove the partnership agreement between Turley and Ethington from the statute of frauds, or they may be able to prove facts required for imposition of a constructive trust. For the foregoing reasons we reverse the trial court's judgment dismissing the Turleys' complaint and awarding attorney fees in the Ethingtons' favor, and remand the case for further proceedings consistent with this opinion. We deny the Turleys' request for attorney fees on appeal without prejudice to their renewing the request in the trial court if they are ultimately the successful party.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

_____
JOHN PELANDER, Chief Judge

_____
GARYE L. VÁSQUEZ, Judge