2013 COA 141

IN RE the ESTATE OF Jeanette Elizabeth GROSBOLL, a/k/a Jeanette E. Grosboll, deceased; and Ashley Nelson Grosboll, a/k/a Ashley N. Grosboll, deceased.

Jo Ann C. Grosboll, Appellant,

v.

Robert Grosboll, Jr.; Eric Grosboll; and Christopher Grosboll, Appellees.

Court of Appeals No. 11CA2626

Colorado Court of Appeals, Div. IV.

Announced October 24, 2013

Winters, Hellerich & Hughes, LLC, Thomas E. Hellerich, Greeley, Colorado, for Appellant

Kaufman & Findley, P.C., William G. Kaufman, Joseph D. Findley, Loveland, Colorado, for Appellees

Opinion by JUDGE LICHTENSTEIN

¶ 1 In this probate matter concerning the consolidated estates of Jeanette Elizabeth Grosboll and Ashley Nelson Grosboll (collectively decedents), Jo Ann C. Grosboll, decedents' daughter, appeals the district court's order finding that the sales proceeds of Loma Vista Apartments (Loma Vista) were an estate asset rather than an asset of Grosboll Manor, L.L.L.P. (partnership), a limited partnership formed between decedents and Jo Ann.[1]

¶ 2 As a matter of first impression, we consider whether real property owned individually by one who enters into a partnership may become a partnership asset without a written conveyance sufficient to satisfy the statute of frauds.[2]

¶ 3 We conclude that a written conveyance from a partner to the partnership is not required because the General Assembly has enacted legislation specifically allowing real property titled in an individual partner's name to be deemed an asset of the partnership, and because the trust relationship between partners provides adequate protection against fraud in oral agreements making a partner's real property a partnership asset. Thus, the intention of the partners determines whether such real property is a partnership asset, but a written conveyance is a factor for a court to consider in evaluating that intent.

¶ 4 We therefore reverse the district court's order finding that because decedents did not execute a deed transferring their individual interest in Loma Vista to the partnership, it was not a partnership asset. We

---

1. The decedents and their children have the same surname. In the interests of clarity, we initially identify each party by full name and refer to them by their given name thereafter.

2. Because this case does not involve the transfer of real property from a partner to third parties, or from the partnership to third parties, our opinion is not intended to apply to those situations.

remand for further findings of fact and conclusions of law consistent with this opinion.

## I. Background

¶ 5 In 2004, the decedents and Jo Ann entered into a limited liability limited partnership by executing a written partnership agreement. Decedents, as general partners each with a 49.5% partnership interest, made initial capital contributions of $750,000; and Jo Ann, as a limited partner with a 1% partnership interest, contributed $100.

¶ 6 On the same day, decedents drafted joint wills. The wills devised each decedent's entire estate to his or her surviving spouse. However, in the event that there was no surviving spouse, the wills provided that Jo Ann would receive the interests in the limited partnership. The wills also provided that the decedents' two sons, Edward E. Grosboll and Robert N. Grosboll, would equally divide the residuary estate.

¶ 7 On separate dates in 2009 and 2010, decedents and Robert died.[3] Edward was informally appointed personal representative of decedents' estate.

¶ 8 When decedents died, Loma Vista was titled in their individual names. After their deaths, a foreclosure action was initiated against it. A few days before the foreclosure sale date, Jo Ann and the personal representative sold Loma Vista and another apartment building owned by Jo Ann to a single purchaser.

¶ 9 The purchaser executed a promissory note for the benefit of the estate, and made monthly payments to the estate. When the personal representative received these monthly payments, he distributed them to Jo Ann.

¶ 10 At the probate hearing, Robert's surviving sons contended that Loma Vista was an estate asset because it was titled in decedents' names. Thus, they asserted that the proceeds from its sale must be distributed among the residuary beneficiaries.

¶ 11 In contrast, Jo Ann contended that, according to the terms of the written part-

nership agreement and the intention of the partners, Loma Vista was a partnership asset. The partnership agreement provided that (1) "[t]itle to all assets of the [p]artnership shall be deemed to be owned by the [p]artnership"; (2) "[r]ecord title to any or all assets of the [p]artnership may be held in the name of ... one or more nominees"; and (3) "[a]ll assets of the [p]artnership shall be recorded as the property of the [p]artnership in the books and records of the [p]artnership, irrespective of the name in which record title to such assets is held." Jo Ann testified that when the partnership was established, she and decedents had agreed to make Loma Vista a partnership asset. Additionally, the accountant for the partnership testified that he treated Loma Vista as a partnership asset on the partnership books. Therefore, Jo Ann asserted she was entitled to the sale proceeds because decedents' wills devised their interests in the partnership to her.

¶ 12 Relying on the statute of frauds, § 38–10–106, C.R.S.2013, the district court ruled that Loma Vista was not a partnership asset because decedents never executed a deed transferring it to the partnership, and further concluded that nothing in the partnership agreement overcame the statute of frauds requirement.

¶ 13 The district court subsequently denied a motion to reconsider, in which the personal representative and Jo Ann asserted the doctrines of resulting and constructive trusts supported Jo Ann's entitlement to the sale proceeds. The court then certified its orders as final pursuant to C.R.C.P. 54(b).

¶ 14 This appeal followed.

## II. Partnership or Estate Asset

Jo Ann contends that the district court erred when it applied the statute of frauds to conclude that Loma Vista was not a partnership asset. We agree.

 We review de novo the district court's interpretation of Colorado law. *See In re Estate of Beren*, 2012 COA 203, ¶ 43, ──

---

**3.** According to decedents' wills, Robert's share of the residuary estate passed to his surviving chil-

dren.

P.3d —— (*cert. granted* Sept. 9, 2013); *In re Estate of Reed,* 201 P.3d 1264, 1267 (Colo. App.2008).

As adopted in Colorado, the statute of frauds provides in part:

> No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands or in any manner relating thereto shall be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing.

§ 38–10–106.

■ ¶ 15 Here, decedents received title to Loma Vista before the partnership was created. They did not execute a deed transferring Loma Vista to the partnership. The district court concluded that without such a deed, Loma Vista could not be deemed a partnership asset:

> [T]o satisfy [the] [s]tatute of [f]rauds, the [d]ecedents were required to issue a deed transferring their individual interest in Loma Vista to [the partnership]. No evidence was presented to the [c]ourt establishing that the property was in fact transferred to [the partnership]. Nothing in the [p]artnership [a]greement for [the partnership] overcomes this [s]tatute of [f]rauds requirement.

¶ 16 Colorado appellate courts have not directly addressed whether real property owned individually by one who enters into a partnership may become a partnership asset without a written conveyance sufficient to satisfy the statute of frauds. A conflict exists among other states that have addressed the issue.

¶ 17 Apparently, this conflict stems from the historical treatment of partnerships. At common law, a partnership was not regarded as a legal entity, and could not hold or convey title to property independently of the partners. *Watt, Tieder, Killian & Hoffar v. United States Fidelity & Guar. Co.,* 847 P.2d 170, 173 (Colo.App.1992) (citing 1 Z. Covitch, *Business Organizations* § 11.02, at 11–5 to 11–8 (1973)); *see also Riddle v. Whitehill,* 135 U.S. 621, 633, 10 S.Ct. 924, 34 L.Ed. 282 (1890) (a partnership cannot "hold the legal title to real estate, as it is not a person in fact or in law"). But when real property used for partnership purposes was titled in the name of one partner alone, a trust resulted in favor of the other partners. *See Riddle,* 135 U.S. at 634, 10 S.Ct. 924.

¶ 18 Numerous states subsequently adopted versions of the Uniform Partnership Act, which parted ways with the common law by providing that partnerships could hold property, including title to real estate. *See Faegre & Benson, LLP v. R & R Investors,* 772 N.W.2d 846, 854 (Minn.Ct.App.2009); *see also, e.g.,* § 7–60–108(3), C.R.S.2013 ("Any estate in real property may be acquired in the partnership name. Title so acquired can be conveyed only in the partnership name.").

¶ 19 Thus, divergent views have developed as to whether an individual partner may contribute his or her real property to the partnership without the execution of some writing sufficient to satisfy the statute of frauds.

¶ 20 Several states strictly adhere to the statute of frauds' requirement for a written conveyance of such property to a partnership, because the statute of frauds is a firmly established feature of real property law. *See Ludwig v. Walter,* 75 N.C.App. 584, 331 S.E.2d 177, 179 (1985); *see also Plummer v. Fogley,* 363 P.2d 238, 241 (Okla.1961) (the statute of frauds applies "to a parol contract by [a partner] to convey certain land owned by him individually to the partnership, or to another partner, or to put it into the partnership stock"); *Pappas v. Gounaris,* 158 Tex. 355, 311 S.W.2d 644, 646–47 (1958); *Quimby v. Myers,* 179 Vt. 611, 895 A.2d 128, 131 (2005) (collecting cases); *Harner v. Harner,* 116 W.Va. 530, 182 S.E. 291, 294–95 (1935).

¶ 21 In contrast, the states that have concluded that such property may become a partnership asset without a written conveyance focus on either (1) partnership statutes that allow real property titled in an individual partner's name to be deemed an asset of the partnership or (2) the trust relationship between partners.

¶ 22 The courts that focus on the partnership statutes conclude that these statutes specifically allow real property to become a partnership asset without a written conveyance. *See, e.g., Turley v. Ethington,* 213 Ariz. 640, 146 P.3d 1282, 1287 (Ariz.Ct.App. 2006) (concluding that by enacting the partnership statutes, which "specifically allow[ ] for oral agreements between partners concerning real property," the legislature has decided that the statute of frauds does not control); *Vlamis v. De Weese,* 216 Md. 384, 140 A.2d 665, 669 (1958) (relying on a provision in partnership statutes which contemplates that individually owned property may become partnership property despite a deed suggesting otherwise); *Crowe v. Smith,* 603 So.2d 301, 305 (Miss.1992) (same). Those courts have also emphasized that statutory provisions governing partnerships sufficiently protect partners from fraud. *See, e.g., Turley,* 146 P.3d at 1288 ("[T]he U.P.A. provides adequate protection from fraudulent or mistaken claims of other partners, leaving little necessity for the protection of the statute of frauds." (quoting 4 Caroline N. Brown, *Corbin on Contracts* § 17.12, at 467 (Joseph M. Perillo ed., 1997))); *Wirth v. Sierra Cascade, LLC,* 234 Or.App. 740, 230 P.3d 29, 45–46 (2010) (noting that "parties will be amply protected from fraud in identifying partnership property and the partners' respective interests therein" by the statute governing what constitutes partnership property); *see also Corbin on Contracts,* § 17.12, at 465 ("[T]here seems little necessity to invoke the statute [of frauds] in order to protect the parties in title-holding partnerships, there being adequate protection furnished by [partnership statutes] to lend reliability to the identification of partnership property and the interests of the partners in it.").

¶ 23 Other courts conclude that one partner holds the real property in trust for the other partners, and, thus, a written conveyance is not required to deem that property an asset of the partnership. *See, e.g., Bastjan v. Bastjan,* 215 Cal. 662, 12 P.2d 627, 629 (1932) ("[F]rom the moment [the partnership] was formed the partners held the properties in trust for themselves and for each other, and no writing was necessary to take the case outside the statute of frauds.");

*Arnold v. Wainwright,* 6 Minn. 358, 369 (1861) ("Lands may be converted into partnership stock by parol agreement of the partners," creating a trust in favor of a partnership, and such trust does not "conflict in any manner with the Statute of Frauds."); *Minter v. Minter,* 80 Or. 369, 157 P. 157, 159 (1916) (concluding that real property became a partnership asset absent a written conveyance satisfying the statute of frauds because a "trust is declared by operation of law in order to overcome the inequitable conduct of a person who takes the money of his copartner under an oral contract of partnership, lets him into possession of the realty, accepts his labors for a long period of time, and finally renounces the relationship on the ground that there is no writing between them declaring the contract").

¶ 24 We conclude that the reasoning in the cases holding that a written conveyance satisfying the statute of frauds is not necessary in order to deem real property a partnership asset conform most closely with Colorado's treatment of partnership property. *See Meagher v. Reed,* 14 Colo. 335, 358, 24 P. 681, 688 (1890) ("If the land is partnership property, the title is vested in the partnership, and is defined, governed, and controlled by well-settled principles of partnership law; and this is true whether the title is vested in one of the partners, or in all."); *Standring v. Standring,* 794 P.2d 1089, 1091 (Colo.App. 1990) ("[W]hether real property purchased by and held in the name of a single partner is a private or partnership asset depends on the intent of the parties."); *Cooley Inv. Co. v. Jones,* 780 P.2d 29, 31 (Colo.App.1989) (a partner's contribution of real property to the partnership as her initial capital contribution was "only a change in the form of ownership, not a transfer of the property to another entity"); *see also Hodgson v. Fowler,* 24 Colo. 278, 282, 50 P. 1034, 1036 (1897) (title to real property purchased with partnership property is held in trust for both partners equally, regardless of whether the legal title was conveyed to one or both; the "statute of frauds has no application").

¶ 25 Both Colorado's Uniform Partnership Law (UPL), §§ 7–60–101 to –154, C.R.S. 2013, and Colorado's Uniform Partnership

Act (UPA), §§ 7–64–101 to –1206, C.R.S. 2013,[4] suggest that a deed satisfying the statute of frauds is not required to convert individually held real property into a partnership asset.

¶ 26 By its terms, the UPL contemplates that property originally brought into a partnership may have been the separate asset of an individual partner: "All property originally brought into the partnership stock *or* subsequently acquired by purchase or otherwise on account of the partnership is partnership property." § 7–60–108(1), C.R.S.2013 (emphasis added). This provision does not distinguish between real and personal property that a partner may transfer to the partnership. *See also Standring,* 794 P.2d at 1090 ("Partners have the right to contribute any property they wish to the partnership.").

¶ 27 The UPL does not directly address whether such a transfer must be accomplished by a deed conveying the property to the partnership. However, two other provisions in this statutory scheme imply that a deed is not required.

¶ 28 Section 7–60–110(3) and (4), C.R.S. 2013, address a partner's authorization to convey partnership real estate to third parties as part of the business of the partnership. Although the present case does not involve conveyances of partnership property to third parties, it is instructive that these provisions contemplate that real estate may be a partnership asset whether it is titled in the partnership name or in the name of one or more but not all of the partners. *See* § 7–60–110(3) ("Where title to real property is in the name of one or more but not all the partners and the record does not disclose the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property if the partner's act does not bind the partnership . . . unless the purchaser or the purchaser's assignee is a holder for value, without knowledge."); § 7–

60–110(4) ("Where the title to real property is in the name of one or more or all the partners or in a third person in trust for the partnership, a conveyance executed by a partner in the partnership name or in the partner's own name passes the equitable interest of the partnership. . . . ").

¶ 29 Similarly, the UPA contemplates that property held in the name of individual partners may be considered a partnership asset, but provides a rebuttable presumption that it is the partner's separate property if not acquired with partnership assets:

> Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets is presumed to be separate property, even if used for partnership purposes.

§ 7–64–204(4), C.R.S.2013.

¶ 30 Because the UPL and UPA specifically contemplate that real property titled in an individual partner's name may be deemed an asset of the partnership, we conclude a written conveyance from a partner who originally brings real estate into the partnership, although a factor to consider, is not required to convert real property into partnership property.

¶ 31 Given that a written conveyance is not required, courts must look to the intention of the parties to determine whether such property is a partnership asset. *See Standring,* 794 P.2d at 1090–91. In *Standring,* a father and son entered into a partnership. *Id.* Part of the partnership assets included rental income from real estate already owned individually by the father. *Id.* Subsequently, the son sought to dissolve the partnership, asserting the real property was a partnership asset. *Id.*

---

4. Only limited partnerships that elect to do so are governed by the later enacted UPA; otherwise, limited partnerships are governed by the UPL. *See* §§ 7–61–129(1)(c), 7–62–1104(1)(c), C.R.S.2013. Here, the partnership agreement states that the partnership was formed under the UPL's section 7–60–144, C.R.S.2013. This provision permits a limited partnership that has not elected to be governed by the UPA to register as a limited liability limited partnership. § 7–60–144(1), C.R.S.2013. Thus, this partnership is governed by the UPL. §§ 7–61–129(1)(c), 7–62–1104(1)(c).

¶ 32 Without addressing the statute of frauds, a division of this court held that "the determination whether real property purchased by and held in the name of a single partner is a private or partnership asset depends on the intent of the parties." *Id.* at 1091. Factors a court should consider in determining the parties' intent to contribute individually held property to a partnership include (1) the language of any partnership agreement; (2) the use of the property in the partnership business; (3) the listing of the property as an asset and of its mortgage as a liability in the partnership books and tax returns; (4) the construction of improvements on the property at partnership expense; (5) the payment of taxes and insurance premiums on the property out of partnership funds; (6) a party's declaration of intent, such as by letter or will, accompanying his act of entering the partnership; and, generally, (7) the parties' conduct with respect to the property. *Id.*

¶ 33 Here, pursuant to decedents' wills and the partnership agreement, after Jeanette died her interest in the partnership passed to her husband, Ashley. Under the partnership agreement, the partnership dissolved if a general partner died unless the limited partners elected to continue the partnership within ninety days. Because Jo Ann—the sole limited partner—did not elect to continue the partnership after Jeanette's death, the district court correctly found that the partnership had dissolved. Nevertheless, the partnership remained in existence until its affairs had been wound up. *See Lyons Sav. & Loan Ass'n v. Dire's Lock & Key Co.*, 885 P.2d 345, 350 (Colo.App.1994) ("[A]fter dissolution, a partnership is not terminated until all partnership business has been wound up." (citing *Hooper v. Yoder*, 737 P.2d 852, 858–59 (Colo.1987))).

¶ 34 After Ashley died, his combined 99% interest passed to Jo Ann pursuant to his will. However, whether Jo Ann's then 100% interest in the partnership included Loma Vista is a matter of the intent of the partners, and remains a question of fact for the district court to determine. *See Standring*, 794 P.2d at 1090.

¶ 35 Because the district court relied solely on the statute of frauds, we conclude that the district court applied an erroneous legal standard to the question of whether Loma Vista was an estate or partnership asset, and we reverse its order in that regard.

### III. Remaining Contentions

¶ 36 Jo Ann also contends that she was entitled to the sale proceeds of Loma Vista either (1) under the equitable remedies of resulting trusts and constructive trusts or (2) because the district court disinherited her in violation of the omitted child statute, § 15–11–302, C.R.S.2013.

¶ 37 Jo Ann's equitable trust arguments depend on the equities of this case and the intent of the parties. *See Page v. Clark*, 197 Colo. 306, 315, 592 P.2d 792, 797 (1979) ("A constructive trust is a creature of equity and springs from a desire to prevent the statute of frauds from being used as a shield which would allow a party to be unjustly enriched."); *First Nat'l Bank v. Harry W. Rabb Found.*, 29 Colo.App. 34, 41, 479 P.2d 986, 989 (1970) (a resulting trust effectuates the presumed intent of the parties). The district court ruled that these arguments were barred because they had been raised for the first time in a post-trial motion, and the court did not make the requisite findings to resolve these claims. Consequently, the record is insufficient to permit our review of the merits of these contentions.

¶ 38 Nor can we address Jo Ann's contention that the district court disinherited her in violation of the omitted child statute. This issue was first raised after the court certified its orders under C.R.C.P. 54(b) and was not separately certified. Therefore, it is not properly before us. *See Scott v. Scott*, 136 P.3d 892, 897 (Colo.2006).

### IV. Remand Instructions

¶ 39 Upon remand, the district court shall determine whether Loma Vista was a personal or partnership asset, applying the appropriate legal standard announced in this opinion. In doing so, the court may, in its discretion, hold further proceedings or take further evidence as it deems necessary.

¶ 40 Jo Ann may raise, and the court should consider, whether a resulting or constructive trust is an appropriate remedy in this case.

### V. Conclusion

¶ 41 The district court's order finding Loma Vista is not a partnership asset is reversed, as well as its rulings regarding the applicability of a constructive or resulting trust. The case is remanded and the court is directed to make further factual findings and conclusions of law consistent with this opinion.

JUDGE WEBB and JUDGE FOX concur.