Nancy ROONEY, Administratrix of the Estate of Thomas Rooney v. David ROONEY

[605 A.2d 520]

No. 90-295

February 5, 1992. Defendant appeals a judgment that defendant pay plaintiff's estate fifty percent of the value of farm real estate formerly owned as joint tenants by Thomas and David Rooney. We reverse.

The facts are undisputed. Hubert Rooney and his wife Katherine farmed in Morristown, Vermont, for many years. In 1968, Hubert, father of Thomas and David Rooney, died leaving his widow sole owner of the farm. Thomas and David had gradually taken over operation of the farm as their father's health deteriorated. In 1971, Katherine transferred ownership of the farm into joint tenancy between herself and her two sons. At that time, an acre lot was deeded outright to David and his wife Charlene, where they built their home. Thomas was single then and lived with his mother at the homestead on the farm. In 1980, Katherine died.

Until Katherine's death, the farm was operated informally by the sons and their mother. All expenses, personal and business, were paid from farm income. Substantial improvements were made, including new barns and a tool shed. In 1977, the brothers purchased as joint tenants an adjacent farm, consisting of 150 acres and a house, where Thomas began to live. A sugar house and garage were built there. In 1979, Thomas married Nancy. After Katherine's death, David and Charlene moved into the house on the home farm and rented their former home. In 1987, Thomas died in a farming accident leaving Nancy and three children as the sole heirs of his intestate estate.

Throughout, all expenses for all properties continued to be paid out of farm income. David and Thomas did business as a partnership and filed federal partnership income tax returns.

From the beginning, the brothers believed what had been explained to them by their lawyer, that the farm would pass to the survivors in the joint tenancy. Thomas expressed this belief on a number of occasions and even purchased life insurance on his life in the face amount of $120,000 so that Nancy would be able to provide for a place to live because the house on the farm would not pass to her. From time to time suggestions were made by various family members, including David, to place parts of the farm property in separate ownership. Thomas consistently was unwilling to do that, wanting to keep the entire farm intact. Shortly before his death, however, Thomas expressed to Nancy that the partnership should be dissolved and separate farms created. This suggestion was made to David by Thomas on one occasion, but neither pursued it.

In 1987, Nancy was appointed administrator of Thomas's estate and requested an accounting of the partnership from David and one-half of the partnership interest. While David agreed to pay nearly $70,000 as the estate's interest in the farm's personal property, he maintained the real estate became his by virtue of the joint tenancy.

The trial court held that the brothers' conduct in operating the farm created a partnership which was sufficient evidence under the circumstances to find that the partners intended that ownership of the real estate be converted from a joint tenancy to partnership ownership, one-

half going to the surviving partner upon death of the other partner.

We agree with the trial court that the brothers were equal partners in operating, maintaining and making improvements on the entire farm property. The court recognized that the brothers appreciated the significance of being joint tenants in ownership of all the real estate, except the small lot deeded to David. Nevertheless, the court concluded that the actual belief was not controlling, and by conducting their affairs as partners, the legal effect of joint tenancy was per se dissipated. The critical findings of fact on the brothers' state of mind about ownership of the real estate in question was stated by the trial court as follows:

> The evidence does show clearly that Thomas and David believed that the property continued to be owned by themselves as joint tenants. . . . However, the fact that they held this belief is hardly dispositive of their *intent*. All objective manifestations of their intent show that they intended the real estate to be partnership property.

While "objective manifestations" demonstrate the brothers intended to use the real estate in the partnership business, the only objective view of their intent with regard to the ownership of the real estate was their acknowledgement that it existed in joint tenancy, with full knowledge that the surviving brother would acquire the real estate.

We appreciate that the evidence suggests that the brothers were moving toward rearranging ownership of the real estate, but we know of no law which supports a conclusion that the mere planning to convert one form of ownership of real estate to another is tantamount to conversion. Here, the planning stage consisted only of exploratory suggestions by the brothers to change ownership of the farm. No significant steps toward accomplishment of the vaguely expressed goals were undertaken, however.

Contrary to the analysis used by the trial court, real estate not in partnership title is not a partnership asset unless there is a clear manifestation of intent that it was meant to be partnership property. H. Reuschlein & W. Gregory, Law of Agency and Partnership, ch. 18, § 212, at 323 (1979). Mere use or occupancy by the partners in and of itself does not convert real estate into partnership property. *Id.* § 215, at 326.

The findings established that the brothers intended that the property be owned by themselves as joint tenants, but the court went further and concluded that they intended the real estate to be partnership property. When the findings do not support the court's conclusion, it cannot stand. See, e.g., *Krupp v. Krupp*, 126 Vt. 511, 515, 236 A.2d 653 (1967).

*Reversed.*