719 So.2d 995 (1998)
Jack M. McCLOUD, Appellant,
v.
James O. DAVISON and Kathryn S. Davison, etc., Appellees.
No. 97-3369.
District Court of Appeal of Florida, Fifth District.
October 30, 1998.
Edward R. Alexander, Jr., Orlando, for Appellant.
William G. Osborne, P.A., Orlando, for Appellees.
PETERSON, Judge.
James M. McCloud appeals a final summary judgment determining that his claims are barred by the statute of frauds. We reverse the summary judgment and remand for further proceedings.
McCloud's complaint alleged that an agreement was reached between the appellees, *996 James and Kathryn Davison, and himself, to purchase, rehabilitate and sell a parcel of real property upon which existed a singlefamily residence, and split the proceeds. McCloud further alleged that the Davisons, unable to secure funds to purchase the property, approached McCloud for the funds. Paragraphs 11 through 19 of the complaint allege:
11. On or before August 19, 1996, Mr. Davison, on behalf of himself and Mrs. Davison, approached Mr. McCloud about funding the acquisition of the Property. Mr. McCloud agreed to provide the funds necessary to purchase the Property in exchange for a fifty percent (50%) partnership interest in the Property.
12. On or about August 19, 1996, Mr. McCloud orally formed a partnership (the "Partnership") with Mr. and Mrs. Davison by agreeing to:(i) contribute assets to the Partnership and/or loan the Partnership money; (ii) use those assets to purchase, remodel and sell the Property; and (iii) divide the profits of the Partnership.
13. Pursuant to their agreement, McCloud was to receive fifty percent (50%) of the profits from the sale of the Property and Mr. and Mrs. Davison were to receive fifty percent (50%) of the profits from the sale of the Property.
14. Pursuant to their agreement, McCloud contributed funds to the Partnership or loaned the Partnership money, and Mr. and Mrs. Davison contributed the opportunity to purchase the Property.
15. The Property, and certain personal property, were purchased and rehabilitated by the Partnership utilizing Partnership funds.
16. Mr. McCloud rendered services as a partner to the Partnership in connection with the purchase and remodeling of the Property. In particular, Mr. McCloud completed certain repairs to the property, undertook to liquidate portions of the personal property of the Partnership and arranged for contractors to make further repairs to the Property. Mr. McCloud also provided contract negotiation services and dealt with the real estate agent selling the Property on behalf of the Partnership.
17. Mr. Davison also rendered services as a partner to the Partnership in connection with the purchase and remodeling of the Property.
18. On or about November 7, 1996, the Property was sold to third party buyers for $114,700.00 (the "Sale").
19. Following the Sale, Mr. and Mrs. Davison received the proceeds of the Sale from the buyers.
McCloud then demanded his half of the partnership profits. The Davisons deny the existence of a partnership.
Three depositions appear in the record: James Davison's, McCloud's, and that of the attorney who closed the original purchase and subsequent resale. James Davison testified that McCloud simply loaned the money for the purchase and was to receive interest. The attorney testified that when James Davison and McCloud appeared at an initial office conference with him, they indicated that Davison had an opportunity to buy the property at a bargain but needed the funds from McCloud in order to purchase it. McCloud agreed to furnish the funds if he received one-half of the partnership profits as a joint venturer. Davison indicated that due to his relationship with the seller of the property it would be better for the Davisons to be named as the sole grantees. Although the attorney inquired about drafting an agreement, Davison and McCloud concluded that because they were "old friends," neither written articles of partnership nor a joint venture agreement was needed. Apparently, McCloud had no objection to having the seller convey the title solely to the Davisons. A variation also developed: The funds for the purchase were to be provided by McCloud's mother who would receive a note and mortgage from the Davisons for the $60,000 acquisition price and $6,000 for restoration expenses.
*997 The property was purchased in the Davisons' name and restored. The restored property was ultimately sold, McCloud's mother was repaid her loan with interest, and when McCloud failed to receive his onehalf of the profits of the alleged partnership, he filed a complaint, the dismissal of which is the subject of this appeal.
An oral agreement between two or more persons to go into the business of buying and selling real estate as partners or as joint venturers and sharing profits and losses from it, is not within the purview of the Statute of Frauds, section 725.01, Florida Statutes (1997), unless there is a provision for transfer of title to specific real property from one of the parties to another. See Russell v. Thielen, 82 So.2d 143 (Fla.1955); Futch v. Head, 511 So.2d 314 (Fla. 1st DCA), rev. denied, 518 So.2d 1275 (Fla.1987); Blynn v. Hirsch, 124 So.2d 314 (Fla. 3d DCA 1960). The Davisons assert a transfer of title to McCloud was clearly intended in this case because, when asked in deposition if one term of the partnership was that he was to be a one-half owner of the property, McCloud answered in the affirmative.
We agree with McCloud that his affirmative response to this question does not indicate that the partnership agreement required the transfer of the title to him. Rather, the meaning of McCloud's affirmative answer must be looked at in the context of all the evidence before the trial court, including the rest of his deposition, as well as the testimony of the attorney who closed the parties' original purchase and subsequent resale. Review of the record does not conclusively indicate that McCloud and the Davisons agreed to transfer the title to the property to McCloud. Contrarily, the record supports McCloud's allegations that he and the Davisons agreed that he would obtain a $66,000 loan while the Davisons would contribute the opportunity to acquire the property, and that McCloud and the Davisons would split evenly the profits from the resale of the property. McCloud is asserting an interest in the profits from the resale; he is not asserting an ownership interest in the title to the property previously conveyed by the Davisons.
Notwithstanding, we recognize Mr. Davison's contention that no partnership ever existed and that he never made any such representation to the closing attorney. According to Mr. Davison, his agreement with McCloud was that he would buy the property with the money McCloud loaned him, fix it up, and then he would pay McCloud back with interest.
There exist genuine issues of material fact regarding the contractual relationship between the parties. Accordingly, we reverse the summary judgment and remand for further proceedings.
JUDGMENT REVERSED; REMANDED.
W. SHARP and THOMPSON, JJ., concur.