2005 VT 123

### Michael QUIMBY v. Gaye Schaufus MYERS

[895 A.2d 128]

No. 04-236

¶ 1. November 9, 2005. This case — before us for a second time — involves a protracted dispute between a former couple over the assets of their alleged partnership in a horse farm business.[1] In this second appeal, defendant Gaye Schaufus Myers contends the trial court erred in: (1) denying her motion for summary judgment, which was based on the Statute of Frauds, and later permitting the jury to determine that real property to which she held exclusive title was

---

[1] The original appeal in this matter was entitled *Quimby v. Schaufus*, No. 2001-528 (Vt. June 27, 2002) (unreported mem.). In May 2001, Gaye Schaufus married Joseph T. Myers. We shall refer to defendant by her married name in this appeal.

a partnership asset despite the absence of a writing transferring title to the partnership; (2) failing to conduct an accounting and judicial dissolution of the partnership taking into account the partners' capital contributions; and (3) dismissing her counterclaim for unjust enrichment. In a cross-appeal, plaintiff Michael Quimby contends the court erred in: (1) dismissing a fraudulent conveyance claim; (2) failing to award prejudgment interest; and (3) denying his motion for attorney's fees. We affirm in part, reverse in part, and remand for further proceedings consistent with the views set forth below.

¶ 2. The material facts may be briefly summarized. Ms. Myers was the sole owner of a sixty-acre wooded lot in the Town of Lowell. In 1994, she began a personal relationship with Mr. Quimby. Quimby claims that he and Myers entered into an oral agreement in which he agreed to sell his house and use the proceeds to construct a pole barn and apartment on the Lowell property for use in a business to breed and sell horses. Although Quimby claims to have invested about $30,000 from the sale, the evidence at trial showed that he gave Myers two checks from the proceeds totaling $19,000. Quimby further testified that he and Myers entered into a "50/50 agreement" under which, if the relationship ended, "we'll sell, we'll split, and we'll be gone." Thereafter, Myers brought a number of her horses to the property, and Quimby claims that together they acquired several more and that he used his income to pay for the cost of feed, utilities, and taxes. Quimby acknowledged that although he pressed Myers "to give me something in writing" she refused, and that he consequently threatened to sue under the "original agreement" for "[h]alf of everything. Half of the house, barn, half of the horses that we had acquired."

¶ 3. The parties' relationship ended in 1999. In August 2000, Quimby filed a complaint against Myers, seeking a dissolution of the partnership, an accounting, and enforcement of the oral agreement to sell the property and divide the proceeds equally upon the dissolution of the parties' relationship. The court denied Quimby's motion for writ of attachment and, thereafter, granted Myers's motion for summary judgment, ruling that the oral agreement for reimbursement of the proceeds that Quimby had allegedly invested in the business was invalid under the Statute of Frauds, 12 V.S.A. § 181(5).[2] In *Quimby v. Schaufus*, No. 2001-528, slip op. at 2 (Vt. June 27, 2002) (unreported mem.), however, we reversed the judgment, holding that an agreement for repayment of money, even if it requires liquidation of real property, does not require a writing. See *Cameron v. Burke*, 153 Vt. 565, 571-72, 572 A.2d 1361, 1365 (1990) (Statute of Frauds does not apply to promise to repay debt from proceeds of resale of land, which does not create interest in property within the statute). We also noted that material issues remained in dispute concerning Quimby's allegation that the parties had an oral agreement to operate a business, and his claim for an accounting. *Quimby*, No. 2001-528, slip op. at 2; see *Harman v. Rogers*, 147 Vt. 11, 14-15, 510 A.2d 161, 163-64 (1986) (partnership may be created by "tacit agreement"); *Dutch Hill Inn, Inc. v. Patten*, 129 Vt. 466, 469, 282

A.2d 815, 817 (1971) (holding that evidence was sufficient to support finding of oral partnership agreement).

¶ 4. Following our decision, Quimby acquired new counsel and filed an amended complaint, alleging that the parties had agreed to be equal partners in the horse farm business, that they were equal owners of the horses, and that the house and land were also "partnership property along with the personal property." He requested that the partnership be dissolved and that the assets be liquidated and distributed under the terms of the parties' agreement. The amended complaint added Myers's new husband, Joseph T. Myers, as a named defendant, alleging that Myers's conveyance of the property to Mr. Myers and herself as tenants by the entirety in June 2001 constituted a fraudulent conveyance. The amended complaint included an additional claim for unjust enrichment. Myers, in response, filed a counterclaim, asserting that Quimby had been unjustly enriched from Myers's services to the household, storage of Quimby's personal items, and contributions to Quimby's antique business.

¶ 5. Prior to trial, Myers moved for partial summary judgment, arguing that Quimby was not entitled to a division of the real property as a partnership asset because she had not transferred the property to Quimby or the partnership in writing, as required by the Statute of Frauds. Although the court failed to rule on the motion, it later overruled Myers's objection, based on the Statute of Frauds, to proposed jury instructions permitting the jury to find that the land and improvements were partnership assets. Myers renewed her objection to the charge at the completion of the court's instructions. The jury returned a special verdict, answering "yes" to the question whether Myers and Quimby had "enter[ed] into an oral agreement to form a 50/50 business partnership," and spe-

---

[2] This section provides that, unless the agreement is in writing and signed by the party to be charged, an action at law may not be brought on "[a] contract for the sale of lands, tenements or hereditaments, or of an interest in or concerning them. Authorization to execute such a contract on behalf of another shall be in writing."

cifically identified the partnership property as land worth $36,600, a house worth $40,900, and horses worth $42,000, for a total of $119,500.[3]

¶ 6. Thereafter, Quimby moved for a nonpossessory writ of attachment or constructive trust on the partnership property, and for liquidation of the partnership property through a judicial sale to pay him half the value of the assets. Myers, in response, moved for a judicial accounting and distribution of the assets, including the contributions of the partners, under 11 V.S.A. § 3277(a). The court granted Quimby's motion and reserved ruling on Myers's request. In April 2004, following a hearing, the court issued a written judgment, ruling that the parties had agreed, upon dissolution of the partnership, to a sale of the partnership assets and a fifty-fifty division of the proceeds, and accordingly awarded Quimby damages of $59,750, noting that Quimby could petition the court for sale of the partnership real estate if the judgment were not satisfied. The court also denied Quimby's request for attorney's fees, and ordered interest to run from the date of judgment.

¶ 7. On appeal, Myers renews her argument that the Statute of Frauds barred Quimby's claim to the real property as a partnership asset. We agree. It is well settled that a writing is required to transfer real property, already owned by one partner, to another partner or to

---

[3] Having so found, the jury, as directed by the special verdict form, did not address Quimby's alternative claims for recovery based on promissory estoppel and unjust enrichment. The court had previously dismissed the fraudulent conveyance claim. The jury also answered "No" to the question whether Quimby had been unjustly enriched from Myers's services.

the partnership. See, e.g., *Johnson v. Gilbert*, 621 P.2d 916, 919 (Ariz. Ct. App. 1980) (contract providing for "transfer of land from one partner or joint venturer to another is within the Statute of Frauds"); *McCloud v. Davison*, 719 So. 2d 995, 997 (Fla. Dist. Ct. App. 1998) (agreements between partners or joint venturers to buy or sell land are not within the purview of the Statute of Frauds "unless there is a provision for transfer of title to specific real property from one of the parties to another"); *Amendola v. Kendzia*, 793 N.Y.S.2d 811, 813 (App. Div. 2005) (affirming motion to dismiss partner's claim for accounting of alleged partnership asset in real property on ground that oral agreement to convey property to partnership was barred by Statute of Frauds); *Ludwig v. Walter*, 331 S.E.2d 177, 179 (N.C. Ct. App. 1985) ("[T]he general rule is that land owned individually by one who enters into a partnership cannot become a partnership asset absent some written agreement sufficient to satisfy the Statute of Frauds."); *Gunsorek v. Heartland Bank*, 707 N.E.2d 557, 563-64 (Ohio Ct. App. 1997) (trial court erred in failing to grant summary judgment based on absence of writing under general rule that partner's agreement to transfer real property he already owned as his contribution to the partnership is within Statute of Frauds); *Shire Dev. v. Frontier Invs.*, 799 P.2d 221, 223-24 (Utah Ct. App. 1990) (if agreement provides for transfer of real property interests among partners, "it would have to be in writing in order to comply with the Statute of Frauds"); see generally 1 Z. Cavitch, Business Organizations § 14.03[2], at 14-15 (2005) (observing that Statute of Frauds applies "where real property [is] to be conveyed from one partner to another"); 9 R. Lord, Williston on Contracts § 25.17, at 606 (4th ed. 1999) (noting general rule that agreement that new partnership shall have an interest in realty

owned by one of the partners is within the Statute of Frauds).

¶ 8. As these authorities demonstrate, while partnership or joint venture agreements need not be in writing as a general matter, the fact that agreements covered by the Statute of Frauds — such as those relating to interests in real property — are made in the context of a partnership or joint venture agreement does not render the statute inapplicable. Merely because the agreement involves parties to a business partnership does not negate the interests traditionally safeguarded under the statute. As the court in *East Piedmont 120 Assocs. v. Sheppard*, 434 S.E.2d 101 (Ga. Ct. App. 1993), cogently observed: "The evidentiary and cautionary purposes of the statute — to prevent fraud and perjury on the one hand and to ensure that parties are aware of the serious consequences of their actions on the other — are implicated when a promise to convey an interest in land is made in the context of a partnership or joint venture agreement just as they are when such a promise is made in any other context." *Id.* at 103; see also *Mason v. Anderson*, 146 Vt. 242, 244, 499 A.2d 783, 784 (1985) (purpose of Statute of Frauds "is to prevent a party from being compelled, by oral and perhaps false testimony, to be held responsible for an agreement he or she claims was never made").

¶ 9. As noted, it is undisputed here that Myers's alleged agreement to convey to Quimby or to the partnership a half interest in her land and the improvements thereon was never reduced to writing. Accordingly, consistent with the general principles and authorities set forth above, we conclude as a matter of law that Quimby's claim to an interest in Myers's real property was barred by the Statute of Frauds, and that the trial court erred in permitting the jury to characterize the real property in question as partnership

assets. That portion of the judgment, therefore, must be reversed.

¶ 10. The question remains whether, as Myers contends, we must also remand the matter for a judicial dissolution, accounting, and distribution under the partnership dissolution statute, 11 V.S.A. § 3277. Myers asserts, in this regard, that the court erred in failing to consider the "contributions of the partners" as liabilities owed to their respective accounts prior to dividing the remaining assets, as required by the statute. *Id.* § 3277(a). The partnership statute expressly provides, however, that subject to certain exceptions not applicable here, "relations among the partners and between the partners and the partnership are governed by the partnership agreement." *Id.* § 3203(a) (further providing that, "[t]o the extent the partnership agreement does not otherwise provide, this chapter governs relations among the partners and between the partners and the partnership."). Thus, where a partnership agreement provides for distribution of the partnership property, the agreement controls over the statute.[4] This is consistent with statutory and case law nationwide. See, e.g., *Disotell v. Stiltner*, 100 P.3d 890, 893 (Alaska 2004) (under partnership statute, partners "are free to make alternative provisions in the partnership agreement" from those in dissolution statute, but absent agreement "the statutory provisions govern by default");

---

[4] The prior version of the partnership statute, in effect until January 1999 (shortly before the parties here dissolved their relationship), similarly provided that, "[i]n settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary." 11 V.S.A. § 1332, repealed 1997, No. 149 (Adj. Sess.), § 2.

*Meehan v. Shaughnessy*, 535 N.E.2d 1255, 1260 (Mass. 1989) (noting that partnership statute "expressly defers to the method of dividing the partnership's assets which the parties bargained for in their partnership agreement"); *McCormick v. Brevig*, 2004 MT 179, ¶ 35, 96 P.3d 697 (oral agreement will suffice to create partnership, and such agreement will govern over dissolution statute, which applies "only in the absence of a partnership agreement to the contrary"); *Hunter v. Straube*, 543 P.2d 278, 281 (Or. 1975) ("*[I]f* the partnership agreement provides for the distribution of the partnership property the rights of the partners are governed by the partnership agreement rather than by the Uniform Partnership Law."); see generally 1 Z. Cavitch, Business Organizations § 29.08[2], at 29–87 (2005) (an agreement between partners concerning distribution of assets controls over dissolution statute).

¶ 11. Here, the court specifically found that Myers and Quimby had agreed, in the event that they dissolved their relationship and business, to sell the business assets and divide the proceeds equally. Although the court, at one point in its decision, referred to the "net proceeds," it is clear from the decision that the court did not find an intent to distribute the assets on the basis of individual capital contributions, but rather — as the court explained — on the basis of a straight "50/50 split of the value of the assets of the partnership." Although there was not a great deal of evidence on this point, Quimby did testify repeatedly to an agreement to sell the business assets and divide the proceeds equally ("we would have a horse business and if anything went bad with the relationship, we'd split up, sell everything, split it 50/50"). Accordingly, we find no error in the court's decision to distribute the assets on the basis of the parties' agreement. Having previously determined that it was error

to include the real property among those assets, we conclude that the judgment must be modified to reflect an equal division of the sole remaining asset, the horses, valued at $42,000, for a corrected award of $21,000 to Quimby.[5]

¶ 12. The parties' remaining claims require little extended discussion. In light of our holding that title to the real property was not, as a matter of law, validly conveyed to Quimby or the partnership, and that Myers therefore remained the sole owner until she conveyed the property to herself and Mr. Myers as tenants by the entirety, we agree with Myers's claim that the court erred in imposing a constructive trust as a basis for securing partnership property. The evidence was also clear that, as Myers's primary residence, the property was exempt from the writ of attachment for the amount of the judgment ($59,000) under the homestead statute. See 27 V.S.A. § 101 (homestead consisting of dwelling house and land, not exceeding $75,000, shall be exempt from attachment). Myers also claims that the court erred in dismissing on its own motion her counterclaim for unjust enrichment. Although the court observed during the charge conference that it did not approve of awarding compensation for domestic services provided in the course of an intimate relationship, it did not dismiss the claim. Indeed, the court spe-

---

[5] Myers asserts in passing that there was no evidence she intended the horses that she owned prior to her relationship with Quimby to become partnership property. The claim, set forth in a single sentence, is not adequately briefed, and in any event is belied by Quimby's repeated testimony that he and Myers had agreed to pool their resources, including the horses, in the partnership, and to sell the assets and divide the proceeds equally in the event of a dissolution.

cifically charged the jury on Myers's claim for labor and storage services that she had provided, and the jury returned a special verdict finding that Quimby had not been unjustly enriched by her services. Accordingly, we discern no error.

¶ 13. Quimby has raised three issues in his cross-appeal. First, he contends the court erred in denying his fraudulent conveyance claim. As the claim was premised, incorrectly, on Quimby's assertion that the real property was a partnership asset, we find no basis to reverse the court's decision. Quimby further contends the court erred in awarding interest from the date of judgment, in April 2004, rather than from the date he allegedly demanded his partnership interest in 1999, or the date of suit in August 2000. The prevailing party is entitled to prejudgment interest when the principal sum recovered is liquidated or capable of ready ascertainment. *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 463, 752 A.2d 26, 36 (2000). Quimby has cited no facts or case law demonstrating how the damages in this case were clearly ascertainable prior to the judgment. Thus, we find no error. Finally, Quimby contends the court erred in denying his motion for attorney's fees incurred when he was allegedly compelled to join Mr. Myers as a party defendant following Myers's allegedly fraudulent conveyance of the real property. As the fraudulent conveyance claim was properly dismissed, there was plainly no basis for the motion.

*The judgment is reversed, and the matter is remanded for modification of the judgment consistent with the views expressed herein.*

Motion for reargument denied January 20, 2006.