2012 VT 99

# In re Estate of Daniel Maggio

[71 A.3d 1130]

No. 11-433

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed November 30, 2012

2

4

*William L. Durrell* and *Nathan D. Rectanus* of *Benjamin, Bookchin & Durrell, P.C.*, Montpelier, for Appellant.

*Charles D. Hickey*, St. Johnsbury, for Appellee.

¶ 1. **Robinson, J.** Rosann Maggio, widow and primary beneficiary of the estate of Daniel Maggio, appeals a decision of the superior court holding that Daniel Maggio did not own an interest in real property in Holland, Vermont at the time of his death. Ms. Maggio argues that the trial court erroneously admitted statements from her interrogatory answers in violation of the best evidence rule, the dead man's statutes, and the requirement in V.R.E. 602 that testimony be based on personal knowledge; that the court's conclusions that the property in question was partnership property and that Daniel Maggio ceded his interest in the partnership to his partner, Paul Silas, prior to Mr. Maggio's death were unsupported by the evidence; and that the trial court erred in declining to apply the Statute of Frauds to the transfer of Mr. Maggio's interest in the partnership. We affirm.

¶ 2. Appellee, Paul Silas, and decedent, Daniel Maggio, operated a business partnership in Connecticut. In 1989, they acquired eight lots in Holland, Vermont from Jipac, N.V. Initially, Mr. Silas made a down payment and executed a promissory note, and Jipac conveyed the property to Mr. Silas. A year later, Mr. Silas reconveyed the lots to himself and Mr. Maggio as tenants in common. The partnership ended in 1991. Mr. Maggio died in 1994.

¶ 3. In 1992, after discovering that the conveyance of the divided lots violated Act 250, Mr. Silas ceased making payments on the promissory note. Jipac sued Mr. Silas for payments due on the note, and Mr. Silas counterclaimed, seeking rescission. Because the court stayed the proceedings to await environmental court review of the district coordinator's opinion that an Act 250 permit was required for the conveyance, the proceedings took several

years. In 2000, Mr. Silas prevailed, and the superior court ordered a rescission of the 1989 sale of the Jipac property to Mr. Silas and entered judgment for a total of over $80,000 to Mr. Silas and two guarantors who had contributed to the cost of the property. We affirmed. *Jipac, N.V. v. Silas*, 174 Vt. 57, 800 A.2d 1092 (2002). Neither Mr. Maggio nor his estate was a party to that suit, was awarded judgment on the counterclaim, or was even mentioned in the judgment order granting rescission.

¶ 4. Mr. Silas then foreclosed on a judgment lien against Jipac and attempted to sell the properties by foreclosure sale. Mr. Silas was unable to do so because the record deed to the properties still listed Mr. Maggio as a tenant in common.

¶ 5. Mr. Silas brought a probate action to clear title to the property under 14 V.S.A. § 1801, and Ms. Maggio opposed his petition. During the initial probate proceeding, the parties agreed to allow the sale of the property and to have their respective interests converted to cash. The litigation then proceeded as an ancillary intestate proceeding to determine whether or not decedent owned an interest·in the property at the time of his death in 1994. In October 2007, the probate court entered judgment in favor of decedent's estate, concluding that the property was not owned by the partnership and that, pursuant to the deed from Silas to Silas and Mr. Maggio as tenants in common, decedent owned a one-half interest in the property at the time of his death.

¶ 6. Mr. Silas appealed the probate court's judgment to the superior court. The superior court held a bench trial in June 2011. Neither Ms. Maggio nor Mr. Silas attended the trial; the only witness was a guarantor on the original promissory note who sought to protect his interest in the proceeds of the sale of the property as determined in the *Jipac v. Silas* litigation. The only evidence before the trial court on the issues central to this case were several documents relating to the property and the partnership (including the Maggio-to-Maggio-and-Silas deed, the promissory note, and partnership tax returns) and interrogatory answers signed under oath by appellant, Ms. Maggio. The trial court reversed the probate court judgment, concluding that, notwithstanding the characterization of title on the deed, the property was an asset of the partnership; when the partnership dissolved, Mr. Maggio relinquished his interest in the partnership, including his interest in the property. Accordingly, the trial court held that the estate of Maggio had no interest in the property at the time of Mr. Maggio's death.

¶ 7. In support of its conclusion that the property was partnership property, the court pointed to Ms. Maggio's interrogatory answer that partnership funds were used to purchase the property. In addition, the court noted, based on the partnership tax returns, that some of the property's carrying costs (i.e., taxes) were paid for with partnership funds. Citing Connecticut law that provided that "[p]roperty is presumed to be partnership property if purchased with partnership assets," even if the instrument transferring title to the property does not name or reference the partnership, Conn. Gen. Stat. § 34-316(c), the court concluded that, therefore, the property was partnership property.[1]

¶ 8. With respect to the question of whether, when the partnership dissolved in 1991, Mr. Maggio ceded his interest in the Holland property to Mr. Silas, the court noted that there was no documentary evidence of the partnership dissolution. However, Ms. Maggio testified in her interrogatory answers that when the partnership ended, "[decedent] received $15,000, and [Mr. Silas] received everything else." The court concluded that "everything else" would have included the property at issue that had been purchased with partnership funds. The court noted that the fact that Mr. Maggio's interest in the property was not mentioned or discussed during the *Jipac v. Silas* litigation further supported its conclusion that the partners intended that Mr. Silas alone would retain the partnership's interest in the real property following the partnership dissolution.

¶ 9. The court considered whether the Statute of Frauds required a writing to relinquish Mr. Maggio's interest in the partnership property back to the remaining partner. Applying Connecticut law, the trial court stated that "a partner's interest in real property is, in fact, a form of personal property," and thus no writing was required to cede Mr. Maggio's interest in the property to Mr. Silas in the context of the partnership dissolution. Accordingly, the court concluded that Mr. Maggio did not own any interest in the Vermont property at the time of his death, and the

---

[1] In its decision, the trial court applied Connecticut law because the partnership was a Connecticut partnership. See 11 V.S.A. § 3206(a). After issuance of the superior court's decision, Ms. Maggio filed a motion to alter or amend the judgment on the basis that the court erred in applying Connecticut law to the matter without notice to the parties. See V.R.C.P. 44.1(a). The court denied Ms. Maggio's motion to amend, explaining that it would reach the same result under Vermont law.

owner of the funds derived from the property's sale was Mr. Silas, subject to any lawful claims against it as partnership property.

¶ 10. On appeal, Ms. Maggio contends the court erred in: (1) admitting her answers to interrogatories in violation of the best evidence rule and the "dead man's" statutes, and without an adequate foundation showing that she had personal knowledge about her husband's business affairs; (2) finding that the property was a partnership asset; (3) finding that Mr. Maggio relinquished his interest in the property to Mr. Silas in the partnership dissolution; (4) holding that the Statute of Frauds did not apply to the transfer of Mr. Maggio's interest in the property to Mr. Silas; and (5) relying on Connecticut law in its decision without first notifying the parties.

I.

¶ 11. First, we consider Ms. Maggio's argument that the trial court erred in admitting her interrogatory answers in violation of the best evidence rule, V.R.E. 1002, 1004, and Vermont's "dead man's" statutes, 12 V.S.A. §§ 1602-1603, and without an adequate foundation because of a lack of personal knowledge. V.R.E. 602. Ms. Maggio objected to the introduction of her interrogatory answers in a motion in limine, which the trial court denied. We review the trial court's exercise of discretion for abuse of discretion, *Billings v. Billings*, 2011 VT 116, ¶ 12, 190 Vt. 487, 35 A.3d 1030, and evaluate the questions of law de novo. *Garbitelli v. Town of Brookfield*, 2011 VT 122, ¶ 5, 191 Vt. 76, 38 A.3d 1133.

A.

¶ 12. Over defendant's best-evidence objection, the trial court admitted Ms. Maggio's answers to interrogatories into evidence. In those interrogatories Ms. Maggio was asked whether there was a written agreement that ended the partnership between decedent and Silas, to which Ms. Maggio responded, "I believe there was a written agreement, since both had attorneys, but I do not have a copy of it, nor am I familiar with its terms." Ms. Maggio was also asked "what each individual received in the way of business assets when [the] business ended?" Ms. Maggio responded: "Danny Maggio received fifteen thousand . . . dollars. Paul Silas received everything else." Appellant argues that the "trial court erred by admitting the interrogatory answers instead of the original written dissolution agreement, without evidence of Silas having made a

8

good faith effort to find the original," in violation of the best evidence rule. V.R.E. 1002, 1004.

¶ 13. V.R.E. 1002 — Vermont's best evidence rule — requires that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules .or by statute."

¶ 14. The threshold question we must answer is whether Ms. Maggio's interrogatory answers were admitted to "prove the content of a writing." The best evidence rule is a rule of common sense. "[I]n order for the rule to be applicable, a witness must be purporting to testify as to his or her observation of the operative terms of a substantive written document." *Chevalier v. Dir. of Revenue*, 928 S.W.2d 388, 392 (Mo. Ct. App. 1996). "If a fact exists independent of the writing, then the best evidence rule does not apply to prohibit testimony as to the .fact." *Id.* at 393; see also *People v. Tharpe-Williams*, 676 N.E.2d 717, 720 (Ill. App. Ct. 1997) ("The best evidence rule states a preference for the production of the original of documentary evidence when the contents of the documentary evidence are sought to be proved.").

¶ 15. We have previously held that the best evidence rule does not exclude testimony that does not purport to reproduce the contents of a writing. See, e.g., *Vreeland v. Essex Lock & Mfg. Co.*, 135 Vt. 1, 5, 370 A.2d 1294, 1296-97 (1976) (oral evidence of facts also contained in price list admissible over best evidence objection because "[t]he fact that particular information may be contained on a particular list does not alone require that list to be introduced before presenting that information"); *Don Lloyd Builders, Inc. v. Paltrow*, 133 Vt. 79, 81, 330 A.2d 82, 83 (1974) (best evidence rule does not bar oral testimony derived from payroll records where obligation at issue was not created by the writings involved); *Lavelette v. Noyes*, 124 Vt. 353, 355, 205 A.2d 413, 415 (1964) (best evidence rule "does not exclude evidence which is not aimed at the contents of the instrument," such as observation of who signed the document).

¶ 16. Ms. Maggio never suggested that she derived her understanding of what each partner received upon dissolution from observing the operative terms of a written partnership dissolution agreement. To the contrary, Ms. Maggio specifically stated that, although she believed a partnership dissolution agreement existed "since both [parties] had attorneys," she "was not

familiar with its terms." In this case, the fact that the dissolution agreement between the parties may have been memorialized in a written document does not render Ms. Maggio's testimony about the resulting state of affairs, not derived from any observation or characterization of a written document, inadmissible under the best evidence rule.

## B.

¶ 17. Vermont's dead man's statutes provide that, subject to enumerated exceptions, "[a] party shall not be allowed to testify in his own favor where the other party to the contract or cause of action in issue and on trial is dead or shown to the court to be insane." 12 V.S.A. § 1602.

¶ 18. In response to the common law rule prohibiting testimony from interested parties, dead man's statutes were created to broaden the scope of admissible evidence. *In re Estate of Farr*, 150 Vt. 196, 199, 552 A.2d 387, 390 (1988) ("[Dead man's statutes] are statutes intended to allow otherwise inadmissible evidence rather than statutes intended to create rules of disqualification."). In the absence of an applicable exception, Mr. Silas's own testimony regarding his partnership dissolution agreement with Mr. Maggio would be excluded under these statutes. Ms. Maggio contends that admitting her interrogatory answers allows Mr. Silas to accomplish the same result, violating the statute. We disagree.

¶ 19. The plain language of § 1602 disqualifies only surviving parties to a contract, not other witnesses, from testifying in their own favor. Our prior decisions confirm this interpretation. See, e.g., *Bemis v. Lamb*, 135 Vt. 618, 620-21, 383 A.2d 614, 617 (1978) ("Of course, because [the individual who offered testimony regarding an oral contract] was not a party to the alleged contract, 12 V.S.A. § 1602 is no bar to his testimony."). And, in considering a virtually identical earlier version of § 1602, we concluded that the dead man's statutes require two factors in order to disqualify a witness: "(1) the witness must be the surviving party to the contract or cause of action in issue and on trial and, (2) the testimony must be in his own favor. Neither standing alone will suffice to reject the witness." *Proulx v. Parrow*, 115 Vt. 232, 236, 56 A.2d 623, 626 (1948). Ms. Maggio was not a party to the partnership dissolution agreement between Mr. Silas

and Mr. Maggio, and her testimony is not in her favor. The dead man's statutes prohibit surviving parties from testifying in their own favor, but do not render incompetent third parties, such as the beneficiaries of an estate, from testifying to their detriment.

## C.

¶ 20. Counsel for decedent's estate also objected at trial to the admissibility of Ms. Maggio's interrogatory answers on the ground that Ms. Maggio lacked personal knowledge about decedent's business.[2] Ms. Maggio argues that the trial court should have excluded Ms. Maggio's interrogatory answers because no evidence was introduced demonstrating Ms. Maggio's personal knowledge of her husband's business affairs.

¶ 21. V.R.E. 602 precludes testimony of a witness "unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Mr. Silas argues that Rule 602 is inapplicable to Ms. Maggio's interrogatory answers because Ms. Maggio is a "party opponent" within the meaning of Rule 801(d)(2), and that Rule 801(d)(2) does not require admissions of a party-opponent to be based on personal knowledge. Mr. Silas cites the Advisory Committee Notes to Federal Rule of Evidence 801(d)(2) to support his position.

¶ 22. Ms. Maggio concedes in her reply brief that, "For purposes of the estate and this lawsuit, Ms. Maggio is the 'party opponent.' " We agree. Rule 801(d)(2) provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is (A) his own statement, in either his individual or a *representative capacity*." (emphasis added).

¶ 23. We have not yet addressed the issue of whether party-opponent admissions pursuant to Rule 801(d)(2) require personal knowledge as a prerequisite to admissibility at trial. The Reporter's Notes to Rule 801 state:

> Admissions are treated as nonhearsay because they come in as a by-product of the adversary system, rather than because of any inherent quality of trustworthiness. More-

---

[2] Mr. Silas argues that "no foundational objection was made in respect of the introduction of the Interrogatory answers." However, the record reveals that, after the trial court indicated it was struggling with finding personal knowledge in relation to the interrogatories, counsel for Ms. Maggio indicated: "And I do object on foundation grounds."

over, the hearsay purpose of cross-examination is satisfied, because the party uttering the statement can scarcely cross-examine himself, although he is free to take the stand to explain the statement.

Reporter's Notes, V.R.E. 801. Accordingly, the Reporter's Notes specifically conclude that "the admissibility of an admission does not depend on trustworthiness." *Id.* This note strongly suggests that evidence admissible pursuant to V.R.E. 801(d)(2) need not satisfy the personal knowledge requirement of Rule 602.

■■ ¶ 24. Moreover, Rule 801(d)(2) describes five classes of party-opponent statements excluded from the definition of hearsay. With respect to four of the classes, the rule says nothing concerning the reliability of the statement; with respect to the fifth class — statements by co-conspirators — the rule provides that such nonhearsay statements may be admitted only if the court finds that the declarant is unavailable and that there is sufficient indicia of reliability to show its trustworthiness. V.R.E. 801(d)(2)(E). If trustworthiness, in the form of personal knowledge, was otherwise a prerequisite to admission under 801(d)(2), the specific inclusion of that requirement in 801(d)(2)(E) would be redundant. *Grenafege v. Dep't of Emp't Sec.*, 134 Vt. 288, 290, 357 A.2d 118, 120 (1976) (recognizing "time-honored precept of 'expressio unius est exclusio alterius' " — the expression of one thing is the exclusion of another).

■ ¶ 25. The Advisory Committee Notes to the comparable federal rule provide further support for the view that admissions of party opponents pursuant to V.R.E. 801(d)(2) are exempt from the personal knowledge requirement. When adopted, V.R.E. 801 was "identical to Federal Rule 801," and the Reporter's Notes accompanying V.R.E. 801 draw heavily on the Federal Advisory Committee Notes to F.R.E. 801. See Reporter's Notes, V.R.E. 801.[3] The Advisory Committee Notes to Federal Rule of Evidence 801 explain:

---

[3] The language of the federal and state versions of Rule 801 has diverged over the years, but none of the amendments are pertinent to the issue before us. See Advisory Committee Notes — 2011 Amendment, F.R.E. 801 (stylistic amendment to federal rules not intended to change any results); Advisory Committee Notes — 1997 Amendment, F.R.E. 801 (amendment to federal rules designed to address issues involving application of rule to co-conspirator statements); Advisory Com-

> No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of truthworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule *and the rule requiring firsthand knowledge,* when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

Advisory Committee Notes — 1972 Proposed Rules, F.R.E. 801 (emphasis added).

¶ 26. Most federal appeals courts that have considered the matter have concluded that admissions pursuant to F.R.E. 801(d)(2) are not subject to the "firsthand knowledge requirement." See, e.g., *Union Mut. Life Ins. Co. v. Chrysler Corp.,* 793 F.2d 1, 8 (1st Cir. 1986) ("We note that the Advisory Committee for the Federal Rules of Evidence refused to make personal knowledge a prerequisite to the admissibility of admissions [of party-opponents]." (internal quotation marks omitted)); *United States v. Ammar,* 714 F.2d 238, 254 (3d Cir. 1983) ("[I]t is clear from the Advisory Committee Notes that the drafters intended that the personal knowledge foundation requirement of Rule 602 should apply to hearsay statements admissible as exceptions under Rules 803 and 804 but not to admissions (including coconspirator statements) admissible under Rule 801(d)(2)."); see also *United States v. Anudu,* Nos. 92-5756 et al., 1996 WL 67214, at *13 (4th Cir. Feb. 16, 1996); *United States v. Lindemann,* 85 F.3d 1232, 1238 (7th Cir. 1996); *United States v. McLernon,* 746 F.2d 1098, 1106 (6th Cir. 1984); *Mahlandt v. Wild Canid Survival & Research Center, Inc.,* 588 F.2d 626, 630-31 (8th Cir. 1978).

¶ 27. For the above reasons, we conclude that V.R.E. 801(d)(2)(A) allows the admission of party-opponent admissions without regard to whether the admission is based on personal knowledge. Accordingly, Ms. Maggio's interrogatory answers, as party-opponent admissions under Rule 801(d)(2)(A), were not

mittee Notes — 1987 Amendment, F.R.E. 801 (amendments to federal rule technical and nonsubstantive); Reporter's Notes — 1986 Amendment, V.R.E. 801 (amendment to Vermont's rule regarding co-conspirator statements made as part of revision of Vermont's conspiracy law).

subject to Rule 602's personal knowledge requirement, and the trial court did not err in admitting them.

## II.

¶ 28. Ms. Maggio further argues that the trial court erred in finding that the Holland property was a partnership asset. Ms. Maggio stated in her answers to interrogatories that the Holland property was purchased with partnership funds. However, the deed to the Holland property provides that Mr. Maggio and Mr. Silas owned the property as tenants in common, and makes no mention of their partnership. As set forth more fully below, the question of whether the trial court's finding that the property was partnership property is a mixed question of fact and law. "We will uphold a trial court's conclusions concerning a mixed question of law and fact if the court applied the correct legal standard and its conclusions are supported by its factual findings." *Adams v. Adams*, 2005 VT 4, ¶ 10, 177 Vt. 448, 869 A.2d 124. Factual determinations "must stand if supported by credible evidence, even though there may be inconsistencies or substantial evidence to the contrary." *Stamato v. Quazzo*, 139 Vt. 155, 158, 423 A.2d 1201, 1203 (1980).

¶ 29. The partnership statute in effect during Mr. Silas and Mr. Maggio's Connecticut-based partnership provided: "Unless the contrary intention appears, property acquired with partnership funds is partnership property." Conn. Gen. Stat. Ann. § 34-46 (West 1992) (repealed 1995).[4] The Legislature based this statute on the Uniform Partnership Act (UPA) § 8(2), which contains identical language. Historical and Statutory Notes — Uniform Law, Conn. Gen. Stat. Ann. § 34-46 (West 1992) (repealed 1995). Sufficient evidence in the record supports the trial court's finding that the property in this case was purchased with partnership funds. Partnership tax records admitted at the hearing supported the trial court's finding, and Ms. Maggio admitted that the property was purchased with partnership funds in her answers to interrogatories. These facts trigger the statutory presumption that the property was therefore partnership property. The critical question in this case is whether the deed from Mr. Silas to Mr. Silas and Mr. Maggio as tenants in common — with no mention

---

[4] Vermont law at that time was identical. 11 V.S.A. § 1163(b) (repealed 1997, No. 149 (Adj. Sess.), § 2).

of their partnership — compelled the trial court to find a contrary intention sufficient to overcome the presumption.

■■ ■ ¶ 30. Although the language in a deed may be a factor supporting a court's finding that property acquired with partnership funds was *not* intended to be treated as partnership property, we reject the notion that, as a matter of law, deed language trumps a court's finding that property was acquired with partnership funds. To hold otherwise would render the applicable provision of the UPA meaningless with respect to any property conveyed with a document reflecting title. *In re Margaret Susan P.*, 169 Vt. 252, 263, 733 A.2d 38, 47 (1999) ("We avoid a statutory construction that would render part of the statutory language superfluous.").

¶ 31. Other courts applying this provision of the UPA have likewise applied the presumption even in the face of conflicting deed or title language. See, e.g., *Diranian v. Diranian*, 773 N.E.2d 462, 466 (Mass. App. Ct. 2002) (concluding that evidence supported trial court's finding that the property in question was purchased with partnership funds and was therefore partnership property even though it was titled to brothers as joint tenants with rights of survivorship, with no mention of partnership); *Crowe v. Smith*, 603 So. 2d 301, 305 (Miss. 1992) (rejecting argument that property was not partnership property because it was deeded to individuals as tenants in common, explaining, "No evidence shows that the property was named as partnership property in its record title or conveyed to the partnership. On the other hand, persuasive authority . . . shows that partnership property need not be recorded as such, but may be proven to be in the partnership by other indicia."); *In re Estate of Palmer*, 708 P.2d 242, 249 (Mont. 1985) (concluding that execution of a joint tenancy signature card for bank account that was funded with partnership monies was insufficient to defeat the presumption that the account was partnership property); *Eckert v. Eckert*, 425 N.W.2d 914, 916 (N.D. 1988) (concluding that patronage credits derived from partnership business with cooperatives were presumed to be partnership property, subject to proof of contrary intention, even though they were titled in the name of individual partner).

¶ 32. Moreover, the fact that the property was titled to Mr. Silas and Mr. Maggio as tenants in common does not necessarily

evidence a contrary intent sufficient to rebut the presumption that the property was intended as partnership property. Other than the language on the deed, Ms. Maggio offered no other evidence to rebut the presumption that the property was partnership property. On this record, we cannot conclude that the trial court abused its discretion in concluding that the property was partnership property.

¶ 33. Ms. Maggio cites our decision in *Rooney v. Rooney* for the proposition that "real estate not in partnership title is not a partnership asset unless there is a clear manifestation of intent that it was meant to be partnership property. Mere use or occupancy by the partners in and of itself does not convert real estate into partnership property." 158 Vt. 643, 644, 605 A.2d 520, 521 (1992) (mem.) (citation omitted). *Rooney* involved farm property conveyed by a mother to herself and her two sons as joint tenants with rights of survivorship. The sons farmed the land in partnership, both before and after their mother's death. After one son died, the trial court ruled that, although the land had been held by the sons as joint tenants with rights of survivorship, the legal effect of the way they operated the farm was to convert the property from joint property to partnership property. We reversed, concluding that the evidence did not support the trial court's conclusion. *Id.* The critical element, missing in *Rooney* and central to this one, is the applicability of the UPA presumption that the property in this case was partnership property because it was purchased with partnership funds. In *Rooney*, the sons apparently acquired the property as a gift from their mother, and thus there was no evidence that the sons' farming partnership paid for the acquisition of the property. For that reason, we did not even mention the UPA in that decision. *Rooney* does not undermine our conclusion that the trial court did not abuse its discretion in finding that the property at issue in this case was partnership property.

### III.

¶ 34. Ms. Maggio further argues that the trial court's conclusion that Mr. Silas acquired sole title to the property following the dissolution of the partnership was not supported by sufficient evidence. The primary evidence supporting the trial court's conclusion was Ms. Maggio's statement that when the partnership dissolved "Danny Maggio received fifteen thousand . . . dollars.

Paul Silas received everything else." The trial court reasonably concluded that the Holland property, as partnership property, was part of the "everything else" transferred to Mr. Silas after dissolution. The court noted that its conclusion was further supported by the absence of any reference to Mr. Maggio's purported interest in the *Jipac v. Silas* litigation.

¶ 35. Ms. Maggio argues that because Mr. Maggio was not a signatory on the promissory note that gave rise to the *Jipac v. Silas* litigation, he was not a necessary party in that suit, and the court improperly relied on the fact that he did not join that case to support its conclusion. This challenge misapprehends the thrust of the court's analysis. The court did not suggest that Mr. Maggio was an essential party to the *Jipac v. Silas* litigation. Instead, it remarked that its conclusion about the parties' intentions was consistent with the behavior of the parties subsequent to the partnership dissolution. The partnership dissolved in 1991, the conflict concerning the failure of Jipac to secure appropriate Act 250 approval for the conveyance first arose in 1992, and Mr. Maggio did not die until 1994. Notwithstanding considerable conflict with substantial ramifications with respect to the value of the property and the enforceability of the underlying purchase of the property, there is no evidence in the record of any act by Mr. Maggio, Mr. Silas, or any third parties that suggests that after 1991 anyone believed Mr. Maggio had an interest in the property. The trial court's inference that the parties' post-dissolution behavior, as reflected in the limited record, supported its conclusion regarding their intentions in dissolving the partnership was not clearly erroneous.

IV.

¶ 36. Ms. Maggio challenges the validity of the transfer of the property from her husband to Mr. Silas in the context of the partnership dissolution on the ground that the Statute of Frauds requires a writing to memorialize transfers of real property. 12 V.S.A. § 181(5). The trial court concluded that real property owned by a partnership is a form of personal property, and thus the Statute of Frauds did not apply when Mr. Maggio transferred his interest in the partnership, including the Holland property, to Mr. Silas in the context of the partnership dissolution. Whether the transfer of an interest held by a partner in a partnership that owns real property to another partner is subject to the Statute of

Frauds is a legal question that we review de novo. *Thompson v. Dewey's South Royalton, Inc.*, 169 Vt. 274, 276, 733 A.2d 65, 67 (1999).

¶ 37. The partnership statute in effect at the time Mr. Silas and Mr. Maggio formed and then dissolved their partnership described a partner's property rights as including the partner's "rights in specific partnership property." Conn. Gen. Stat. Ann. § 34-62 (West 1992) (repealed 1995). "Under Connecticut's prior and current Uniform Partnership Act, partnership realty is considered personalty with respect to any individual partner's rights therein." *Gorelick v. Montanaro*, 990 A.2d 371, 383 (Conn. App. Ct. 2010); see also Conn. Gen. Stat. Ann. § 34-64 (West 1992) (repealed 1995) ("A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property.").[5] The trial court interpreted this statute to mean that when the partnership ended in 1991, the transfer of Mr. Maggio's interest in the partnership to Mr. Silas was a transfer of personal property for the purpose of the Statute of Frauds. We agree.

¶ 38. One commentator has explained that the UPA, which was the basis for the then-applicable Connecticut provision cited above, adopted the English approach to partnership property; that approach views real property owned by a partnership as personal property to facilitate property division during dissolution. W. Lewis, *The Uniform Partnership Act*, 24 Yale L.J. 617, 637-38 (1915) ("Experience has shown that the English courts in regarding the interest of the partner in the partnership as personal property, irrespective of the physical character of the property of the partnership, proceeded along sound, and therefore, practical lines. . . . [E]very partner, on winding up, has a right to receive in cash the value of [the partner's] interest in the firm."). A consequence of this classification is that a transfer of a partner's interest in a partnership, including an interest in a partnership that owns real property, is not subject to the Statute of Frauds. See, e.g., *Forward v. Beucler*, 702 F. Supp. 582, 585 (E.D. Va. 1988) ("[E]nforceability of an oral promise to transfer a limited partnership interest is not barred by the statute of frauds even if the partnership's sole asset is real property. . . . [P]artnership

---

[5] The analysis under the Vermont law applicable at the time would be the same. See 11 V.S.A. §§ 1281, 1283 (repealed 1997, No. 149 (Adj. Sess.), § 2) (characterizing partner's interest in partnership as personal property).

interests are personalty whatever the nature of the partnership assets."); *Beach v. Anderson*, 417 N.W.2d 709, 712-13 (Minn. Ct. App. 1988) (stipulation to transfer partnership interest was an agreement to transfer personalty and therefore not subject to Statute of Frauds, even though partnership owned real property); *Malaty v. Malaty*, 944 N.Y.S.2d 591, 593 (App. Div. 2012) ("The statute of frauds does not render void oral joint venture agreements to deal in real property, as the interest of each joint venturer in a joint venture is deemed personalty."); *Potter v. Homestead Preservation Ass'n*, 412 S.E.2d 1, 6 (N.C. 1992) ("A partner's interest in partnership assets — including real property — is a personal property interest. As such, it is not subject to the statute of frauds."); *Wirth v. Sierra Cascade, LLC*, 230 P.3d 29, 45 (Or. Ct. App. 2010) (explaining that the Statute of Frauds does not apply to agreements to transfer property "from partner to partnership" or "from partner to partner, on behalf of the partnership").

▮ ¶ 39. Insofar as then-applicable Connecticut General Statutes § 34-64 provided that a partner's interest in a partnership and its assets is personal property, without regard to whether the partnership owns real property, Mr. Maggio's transfer of his interest in the partnership to Mr. Silas in connection with the dissolution of the partnership was a transfer of personal property not subject to the Statute of Frauds.

¶ 40. Ms. Maggio argues that the trial court's ruling concerning the applicability of the Statute of Frauds conflicts with our decision in *Quimby v. Myers*, 2005 VT 123, 179 Vt. 611, 895 A.2d 128 (mem.). We disagree. In *Quimby*, we considered the validity of an oral agreement to form a partnership and transfer land, individually owned by one of the partners, to the partnership. We held this oral agreement unenforceable because it did not comply with the Statute of Frauds. The transfer at issue in the *Quimby* case was a transfer of an interest in real property — from an individual to the partnership. The transaction did not involve a transfer of a partnership interest because the property in question never made it *into* the partnership. The present case is distinguishable. The transaction at issue in this case involved Mr. Maggio's relinquishment of his interest in the partnership, which left Silas fully vested in all remaining partnership assets, including the Holland property. The pivotal distinction is between a transaction that constitutes a conveyance of an interest in a partner-

ship, which is personal property regardless of whether the partnership assets thereby conveyed include real property, and a transaction that is a conveyance of the real property itself.

## V.

¶ 41. Finally, we consider Ms. Maggio's argument that the trial court erred by relying on Connecticut law without first notifying the parties. The trial court concluded that the partnership owned the Holland property, that Mr. Maggio transferred his interest in the property to Mr. Silas when the partnership dissolved, and that the Statute of Frauds did not apply to this transfer of partnership property. In its September 16, 2011 judgment order, the trial court based these determinations on Connecticut law because the partnership was based in Connecticut. However, in response to Ms. Maggio's motion to alter or amend judgment on the basis that the trial court incorrectly applied Connecticut law, the trial court issued a follow-up order, and arrived at the same conclusion based on Vermont law. As noted above, we uphold the trial court's conclusions whether we apply Connecticut or Vermont partnership laws in effect when the partnership acquired the Holland property and subsequently dissolved. Accordingly, Ms. Maggio's argument has no merit.

*Affirmed.*